In re Donald L. SCHLEMMER,
Respondent.

A Member of the Bar of the District
of Columbia Court of Appeals.

No. 02–BG–1450.

District of Columbia Court of Appeals.

Argued Oct. 30, 2003.
Decided Jan. 8, 2004.

Elizabeth A. Herman, Senior Assistant
Bar Counsel, with whom Joyce E. Peters,
Bar Counsel, was on the brief, for the
Office of Bar Counsel.

Herbert Alan Durbin for respondent.

Before TERRY, GLICKMAN, and
WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

We review a Report and Recommendation by the Board on Professional Responsibility (the "Board") that Respondent Donald L. Schlemmer ("Respondent") be publicly censured for violating disciplinary rules 1.3(a) and 1.4(a). Although Respondent does not challenge the Board's findings of fact, he has noted an exception to the Board's recommended sanction, arguing that an informal admonition is more

appropriate than public censure given the circumstances in this case. Because the Board's recommended sanction appears to be inconsistent with sanctions that have been imposed in comparable cases, we remand this case to the Board for further consideration in light of this opinion.

## I. Procedural Background

After receiving complaints filed on behalf of two clients whom Respondent had represented in immigration matters, Bar Counsel initiated formal disciplinary proceedings against Respondent on September 18, 2000. On September 26, 2001, an Ad Hoc Hearing Committee ("Committee") concluded that Respondent had violated Rules 1.1(a), 1.3(a) and 1.4(a) in his representation of one client, but that he had not violated any rules regarding the other client. The Hearing Committee Report then recommended that Respondent receive an informal admonition as a sanction. Neither Bar Counsel nor Respondent noted exceptions to the Board regarding the Hearing Committee Report.

Upon review of the Hearing Committee Report, the Board adopted the Committee's findings of fact. Although the Board agreed with the Committee that Respondent violated Rules 1.3(a) and 1.4(a), the Board did not find a violation of Rule 1.1(a). Despite the fact that the Board found fewer rule violations than were found by the Committee, the Board recommended that Respondent receive a public censure, a more stringent sanction than the proposed informal admonition recommended by the Hearing Committee. Re-

spondent then noted an exception to the Board's recommended sanction.

## II. The Board Findings [1]

Respondent has been a member of the District of Columbia Bar since July 15, 1988. A sole practitioner in the field of immigration law, Respondent estimates that he has handled "probably thousands" of immigration cases, many of which have been asylum cases like the two involved in this disciplinary matter. Because Respondent's clients typically do not speak English, Respondent often employs independent translators. When representing Spanish-speaking clients, Respondent commonly utilizes the services of Immigration Consultants, a translation service and "independent paralegal company" operated by Julio S. Gagnon ("Mr.Gagnon"). In this case, both complainants were Spanish-speaking individuals who retained Respondent's services because Immigration Consultants referred them to him.[2]

Fidel Iraheta ("Mr.Iraheta") was a forty-year-old construction worker from El Salvador who could neither read nor understand much English. In 1993, Mr. Iraheta retained Immigration Consultants to prepare a request for asylum and secure a work permit for him. When Mr. Iraheta's asylum case was finally scheduled for a hearing before the Immigration Court in October 1998, Immigration Consultants recommended Respondent as a lawyer who could represent him in those proceedings. Respondent agreed to represent Mr. Iraheta at the preliminary hearing in October 1998 and again at a hearing on the

---

1. Because the Board adopted the Hearing Committee's findings of fact in their entirety, any references to the Hearing Committee's findings of fact, herein, shall be considered the factual findings of the Board.

2. The Board found rule violations with respect to Respondent's representation of only

one of the two complainants, Fidel A. Iraheta ("Mr.Iraheta"). Because we are charged with determining whether the recommended sanction is appropriate given the severity of the violations, our discussion here is limited to the circumstances surrounding Respondent's representation of Mr. Iraheta.

merits in August 1999. At the August 1999 hearing, the immigration judge denied Iraheta's request for withholding of deportation and denied his request for asylum. The judge did, however, grant his request for voluntary departure.

Following the hearing, Respondent met with Mr. Iraheta and translators, Julio Cesar Santiago Gonzalez and Mr. Gagnon, in the offices of Immigration Consultants to discuss the possibility of an appeal. According to Respondent's testimony, when Iraheta indicated that he wanted to appeal, Respondent explained that the appeal would cost $1500 plus a $110 filing fee, of which $750 and the filing fee were to be paid up-front. Respondent testified that after further negotiations, the parties agreed that Mr. Iraheta would pay the $110 filing fee along with $625 as an up-front partial payment for the appeal. In Respondent's view, he had made it clear to Mr. Iraheta that he was not going to file the appeal unless he "ma[de] that deposit and br[ought] the filing fee."

Mr. Iraheta presented a different version of the agreement that was made that afternoon. According to Mr. Iraheta, he and Respondent "also agreed on what it [would] cost me to submit the appeal, which was $630. That day I paid $325 and agreed that I'd pay the rest on another date, and we did not set a date. They were not rushing me to set a date for payment either." Mr. Iraheta further testified that neither Respondent nor the two translators present ever told him that Respondent would not file the appeal.

Mr. Gagnon was the only translator present during the fee negotiations. According to the Hearing Committee Report, Mr. Gagnon's testimony "appear[ed] to support Iraheta's belief that the total amount of the fee demanded by Respondent was $630." Mr. Gagnon's testimony also suggested that Respondent had agreed to take part of that $630 fee at some later date.[3]

After considering the testimony of Respondent, Mr. Iraheta, and both interpreters, the Committee concluded that "[t]he terms upon which Respondent testified he conditioned his filing an appeal on Iraheta's behalf were not communicated to Iraheta with sufficient clarity." Indeed, rather than paying the full amount Respondent required, Mr. Iraheta brought a $320 payment to the Immigration Consultants office on August 27, 1999, thirteen days before the appeal deadline. The receptionist gave him a receipt stating that the payment was for "Apelacias," or "Appeal" in Spanish. Mr. Iraheta did not pay any more money for his appeal, and Respondent did not file the appeal because he believed his obligation to appeal was conditioned on Mr. Iraheta's payment in full of $625 plus the $110 filing fee.

Respondent was aware that Mr. Iraheta had paid him the $320 and requested that Mr. Santiago contact Mr. Iraheta regarding the deficiency of his payment. Mr. Santiago made a number of attempts to contact Mr. Iraheta by telephone prior to the September 9, 1999 appeal deadline but was unable to reach him.[4] After the deadline passed, Mr. Iraheta went to the Immigration Consultants offices to check on the

---

3. Mr. Gagnon's testimony before the Hearing Committee was as follows:
    Q:  Okay. And the lower amount that he negotiated, [Respondent] agreed to take part of that money at some later date?
    A:  Yes, at a later date. The balance was to be paid later, yes.

4. The Board found it significant that Mr. Iraheta lived "right by" the Immigration Consultants' office yet there was no evidence that any other efforts were made to contact him prior to the appeal deadline.

status of his appeal and was told that it had not been filed.

Based on the foregoing facts, the Board concluded that "Iraheta reasonably believed that Respondent would file an appeal in his case after he paid the $320 to Immigration Consultants." The Board further found that "the payment of that $320 in the circumstances was sufficient to communicate to Respondent that Iraheta intended for him to file an appeal." Because an attorney-client relationship had been created with respect to the appeal, the Board found that Respondent violated Rule 1.3(a)[5] when he failed to file the appeal, and Rule 1.4(a)[6] when he failed to tell Mr. Iraheta that the appeal had not been filed. The Board took notice of the Hearing Committee's findings with regard to mitigating factors, including Respondent's previously-unblemished record and his "extraordinary efforts in voluntary, *pro bono* service to the immigrant community in the Washington area."[7] Ultimately, because of the "seriousness" of the misconduct and the prejudice caused to Mr. Iraheta, the Board recommended that Respondent receive a public censure. Although the Board explained why it recommended a public censure as opposed to a short suspension, it did not explain why a public censure was more appropriate than an informal admonition.

### III. Discussion

■■■■ We are called upon in the instant case to determine whether the Board's recommendation that Respondent be publicly censured is an appropriate sanction. At the outset, we recognize the strong presumption in favor of the Board's recommended sanction. "Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re Goffe,* 641 A.2d 458, 463–64 (D.C. 1994) (per curiam). Under our rules, we will adopt the Board's recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g)(1) (2001); *In re Slattery,* 767 A.2d 203, 214 (D.C.2001); *In re Bernstein,* 707 A.2d 371, 377 (D.C.1998). When determining the consistency of sanctions between cases, "it is necessary to compare the 'gravity and frequency of the misconduct, any prior discipline, and any mitigating factors such as cooperation with Bar Counsel, remorse, illness, or stress.'" *Slattery,* 767 A.2d at 215 (quoting *In re Steele,* 630 A.2d 196, 199 (D.C.1993)). An appropriate sanction will be based on a consideration of all relevant factors, including "1) the nature of the violation; 2) the mitigating and aggravating circumstances; 3) the need to protect the public, the courts, and the legal profession; and 4) the moral fitness of the attorney." *Slattery,* 767 A.2d at 214–15; *Goffe,* 641 A.2d at 464.

In the case at bar, the Board found that the nature of Respondent's violation "was quite serious in that it was clearly prejudicial to the client's interest and violated several rules of Professional Conduct." In light of the mitigating evidence presented by Respondent, however, the Board determined that "a public censure [would] ade-

---

5.  Rule 1.3(a), regarding "Diligence and Zeal" provides that "[a] lawyer shall represent a client zealously and diligently within the bounds of the law."

6.  Rule 1.4(a), regarding "Communication" provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

7.  At the hearing, Respondent introduced six letters from charitable organizations attesting to his commitment to *pro bono* work.

quately serve the interest of the disciplinary system." The Board relied on two cases, *In re Bland,* 714 A.2d 787 (D.C. 1998) (per curiam), and *In re Hill,* 619 A.2d 936 (D.C.1993) (per curiam), to justify its recommendation that Respondent be publicly censured. We find that the Board's reliance upon these two cases is misplaced because *Bland* and *Hill* both involved aggravating circumstances that are not present here.

In *Bland,* we adopted a public censure recommendation for a Virginia attorney who violated ten disciplinary rules in connection with a workers' compensation claim that he filed for his cousin in the District of Columbia. *Bland,* 714 A.2d at 787. Although *Bland* had a previously unblemished record and was found not to have intentionally disregarded his client's interest, the Board recommended a public censure in order to

> send the message that this Court and the general public have the right to expect that all members of this Bar will follow the rules of this Court and diligently prosecute cases that are filed in this jurisdiction, regardless of where the attorney lives and practices and regardless of the amount of the legal fee received in the performance of legal services.

*Id.*

There are a number of distinctions between *Bland* and the instant case. Initially, it is worth noting that in *Bland,* neither Bar Counsel nor Bland himself filed an exception to the Board's recommended sanction. *Id.* For that reason, our review of the Board's recommendation in *Bland* was "especially deferential." *Id.* (citing *In re Delaney,* 697 A.2d 1212, 1214 (D.C. 1997)). In the case before us, however, Respondent has noted an exception to the Board's report, and so our review of the Board's recommendation is not as "narrowly circumscribed." *See Bland,* 714 A.2d at 787. Furthermore, in the case before us, Respondent was found to have violated only *two* rules of professional conduct, not ten, as was the case in *Bland.* In addition to the two rules violated by Respondent, *Bland* violated rules 1.1(a) (failure to provide competent representation), 1.1(b) (failure to serve with skill and care), 1.3(c) (failure to act with reasonable promptness), 1.4(b) (failure to explain matters to client), 1.16(b) (attempting to withdraw against client's interests), 1.16(d) (failure to protect client's interests when attempting to withdraw), 3.4(c) (disobeying court rules), and 3.4(d) (failure to comply with discovery requests). *Bland,* 714 A.2d at 787 n. 2. Thus, a good deal of misconduct involved in *Bland* was of a different nature from that involved in the instant case. Finally, although Bland had no prior disciplinary history, he did not have the outstanding *pro bono* record that Respondent has in this case.

*In re Hill* is likewise distinguishable from the case at bar because it involved aggravating circumstances. In addition to "persistently neglect[ing] a criminal appeal to which he had been appointed," Hill was found to have "engaged in conduct prejudicial to the administration of justice" when he failed to respond to this Court's orders that he file a brief on behalf of his client and did not cooperate with Bar Counsel's investigation. *In re Hill,* 619 A.2d at 937–38. Although the Hearing Committee recommended that Hill be informally admonished, the Board considered Hill's "year long non-response to Bar Counsel" to be an aggravating factor that warranted the more stringent sanction of public censure. *Id.* at 938.

The instant case bears little resemblance to *Hill.* Here, the Board found that Respondent's misconduct stemmed from "an honest but mistaken perception of his obli-

gations to his client." Hill, in contrast, had received several orders from this Court requiring him to file a brief on behalf of his client yet he failed to do so over the course of five months. Moreover, unlike Hill, Respondent cooperated fully with Bar Counsel's investigation and has not engaged in any "conduct prejudicial to the administration of justice."

Relying as it did upon *Bland* and *Hill,* the Board does not appear to have considered three ostensibly comparable cases which resulted in informal admonitions being issued by Bar Counsel. During oral argument, Bar Counsel asserted that it would be unwise to rely on these cases because, typically, informal admonitions are issued by Bar Counsel without a complete fact-finding by the Hearing Committee. Bar Counsel also suggested that informal admonition letters often omit information regarding mitigating factors that would be relevant to a determination of the appropriate sanction.

As a threshold matter, we note that informal admonition letters may come about in three different ways: (1) after an investigation, Bar Counsel may issue an informal admonition letter of its own accord,[8] (2) after a formal hearing, the Board may direct Bar Counsel to issue an informal admonition,[9] or (3) if exceptions are taken to the Board's recommended sanction, or if this court chooses to review the Board's actions, this court may direct Bar

Counsel to issue an informal admonition.[10] In any event, Bar Counsel is responsible for the content of all informal admonition letters. These letters are matters of public record, D.C. Bar R. XI, § 17(a) (2001), and are available on the District of Columbia Bar Association website.[11] Even when informal admonition letters are issued without a formal hearing, such letters are based on Bar Counsel's extensive independent investigations.[12] Informal admonition letters, therefore, may contain sufficient detail to be useful to this court in determining the range of sanctions appropriate in similar circumstances.

This is not the first time our court has recognized the utility of informal admonition letters. In *In re Confidential (J.E.S.),* 670 A.2d 1343 (D.C.1996), we upheld a recommendation of the Board to informally admonish an attorney for violating Rule 1.5(e)(2) where the Board, lacking precedent from this court, was persuaded by the "numerous informal admonitions" issued by Bar Counsel for violations of Rule 1.5(b) in other discipline cases. *Id.* at 1346. We saw nothing inherently wrong with the Board's consideration of informal admonition letters in that case, and despite Bar Counsel's protestations at oral argument, we see nothing inherently wrong with the Board or this court considering informal admonition letters in the future, where appropriate.[13]

8. D.C. Bar R. XI, § 8(b) (2001).

9. D.C. Bar R. XI, § 9(c)-(d) (2001).

10. D.C. Bar R. XI, § 9(g)(1) (2001).

11. *See* http://www.dcb ar.org/for_lawyers/ethics/discipline/informal_ads.cfm (last modified December 18, 2003).

12. *See, e.g., In re Allen,* Bar Docket No. 234–96 (issuing an informal admonition after a "review of [Allen's] office file, a videotape of the INS interview with Ms. Robinson, materi-

al submitted to the INS and Immigration Court, letters submitted to this office, and all the discovery and file material from the civil malpractice case").

13. In light of our determination that informal admonition letters are relevant to the issue of disciplinary consistency, we suggest that Bar Counsel include as much information as possible in informal admonition letters so that adequate factual comparisons may be made.

Having determined that both the Board and this court may consider informal admonition letters that contain sufficient information from which to make a reliable comparison, we turn now to three cases which appear to be similar to the present case where informal admonitions were issued. In the most recent case, *In re Uriarte*, Bar Docket No. 380–02, Uriarte agreed to handle an appeal of a political asylum claim before the Board of Immigration Appeals.[14] Although Uriarte timely noted the appeal, he failed to file a brief in support of the appeal and did not respond to the Immigration and Naturalization Service's memorandum in opposition. As a result, the appeal was dismissed. The Bar Counsel investigation found that Uriarte's actions had violated Rules 1.1(a) and (b) (competence), 1.3(a) (diligence and zeal), and 1.4(a) (communication). *Id.* Initially, we note that the prejudice to Uriarte's client—dismissal of her appeal—is the same prejudice suffered by Mr. Iraheta in the instant case. Additionally, although Respondent violated only two disciplinary rules, Uriarte violated four. As it does not appear that there were any mitigating circumstances present in Uriarte's case, it is unclear why Respondent should receive a harsher sanction than Uriarte received.

Like the case at bar, *In re Cohen*, Bar Docket No. 042–98, involved an attorney's failure to appeal the denial of her client's request for asylum. In *Cohen*, Bar Counsel found that Cohen violated Rules 1.1(a) and (b) when, instead of noting an appeal, Cohen filed a motion to reopen/reconsider which did not stay the court's deportation order.[15] According to Bar Counsel, Cohen violated rule 1.4(b) when she failed to explain to her client that, unless an appeal was filed within 30 days, her client would be deported. Bar Counsel also found that Cohen had acted incompetently in failing to adequately review a number of documents prior to submitting them in court, which led to some documents being excluded from the record for improper certification. Finding that the exclusion of these documents did not appear to prejudice the client, Bar Counsel opted for an informal admonition. We note that Bar Counsel neglected to mention any prejudice caused by Cohen's failure to file an appeal on behalf of her client. Arguably, the prejudice in *Cohen* was more serious than that caused by Respondent because Cohen's client was facing imminent deportation, while Respondent's client was not.

In *In re Allen*, Bar Docket No. 234–96, Bar Counsel informally admonished an attorney who failed to note a timely appeal from an Immigration Court decision rendered after the attorney failed to appear at the Court hearing. Bar Counsel found violations of Rules 1.3(a) (diligence and zeal) and 1.4(a) and (b) (communication). As in Respondent's case, Bar Counsel determined that Allen's failure to appear in court and note the appeal "was not a considered decision but the result of negligence." *Id.*

In the case before us, the Board's recommendation to publicly censure (rather than informally admonish) Respondent seems to be based on its determination that "Respondent's misconduct here was quite serious" and "prejudicial" to his client's interest. Respondent's misconduct, however, appears to be no different from that involved in *Uriarte, Cohen,* and

---

14. Uriarte received a payment of $1000, plus filing costs, for this appeal. *Id.*

15. Bar Counsel found that Cohen was unaware that filing a motion to reopen/reconsid-

er would not stay her client's deportation order. Her ignorance of this fact was a violation of Rules 1.1(a) and (b) (competence).

*Allen,* where Bar Counsel issued informal admonitions. Respondent, like the attorneys in *Uriarte, Cohen,* and *Allen,* failed to pursue an appeal on behalf of a client who expected him to do so. Respondent's client suffered the same prejudice as did the clients in these three cases: he nearly lost his right to an appeal. Unfortunately, the Board does not appear to have considered these informal admonition cases when it recommended that Respondent receive a public censure. Therefore, without some clarification as to why *Uriarte, Cohen, and Allen* are distinguishable from the case at bar, or a reasoned explanation of why the Board believes their sanction to have been too lenient, we are concerned that accepting the Board's recommended sanction would "foster a tendency toward inconsistent dispositions for comparable conduct." D.C. Bar R. XI, § 9(g)(1) (2001).

We emphasize that the Board is not bound by Bar Counsel's informal admonition letters in recommending an appropriate sanction. Exercising its own judgment the Board may conclude that, in a given case, that sanction is too lenient for conduct that, after all, can result in forfeiture of a vital client right. We require only that the Board give reasoned consideration to such admonitions that are brought to its attention, in order to avoid inconsistent dispositions for similar conduct. Accordingly, we remand this matter to the Board for further consideration of an appropriate sanction in light of this opinion.

*So ordered.*