**In re Donald L. SCHLEMMER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 04–BG–707.**

District of Columbia Court of Appeals.

Argued March 2, 2005.
Decided March 17, 2005.

Herman Alan Dubin, for respondent.

Elizabeth A. Herman, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel at the time the brief was filed, for the Office of Bar Counsel.

Before TERRY and REID, Associate Judges, and BELSON, Senior Judge.

REID, Associate Judge:

The Board on Professional Responsibility ("the Board") has recommended that respondent, Donald L. Schlemmer, be reprimanded for violating (1) Rule 1.3(a) of the Rules of Professional Conduct when he failed to file an appeal, as requested by his client, after the Immigration Court denied the client's requests to withhold deportation and to grant him asylum, and (2) Rule 1.4(a) when he failed to inform his client that the appeal had not been filed. Mr. Schlemmer contended that the client paid only $320 of the required $625 down payment, and that he had told the client that he would not file the appeal until he received the full amount of the down payment. The client, who used an interpreter to communicate with Mr. Schlemmer, understood that the total fee for the appeal was $630, and that $320 was sufficient to initiate the appeal. Ultimately, the Board recommended a reprimand as a sanction. Mr. Schlemmer took exception and argues

that an informal admonition was the appropriate sanction. We accept the Board's recommendation.

## FACTUAL SUMMARY

This is the second time that Mr. Schlemmer's case is before us. In *In re Schlemmer*, 840 A.2d 657 (D.C.2004) (*Schlemmer I*), we considered whether we should adopt the Board on Professional Responsibility's recommendation that the sanction of public censure be imposed on Mr. Schlemmer for his violation of disciplinary rules 1.3(a) [1] and 1.4(a).[2] We remanded his case to the Board after concluding that "both the Board and this court may consider informal admonition letters [issued by Bar Counsel] that contain sufficient information from which to make a reliable comparison." *Id.* at 663. We identified three informal admonition cases that the Board should consider, and declared that:

> [T]he Board is not bound by Bar Counsel's informal admonition letters in recommending an appropriate sanction. Exercising its own judgment the Board may conclude that in a given case, that sanction is too lenient for conduct that ... can result in forfeiture of a vital client right. We require only that the Board give reasoned consideration to such admonitions that are brought to its attention, in order to avoid inconsistent dispositions for similar conduct.

*Id.* at 664.

On remand and with the benefit of supplemental briefs from Mr. Schlemmer and Bar Counsel, the Board issued an order imposing the sanction of a Board reprimand on respondent. In doing so, the Board reviewed and analyzed the three informal admonition cases discussed in *Schlemmer I*. In distinguishing *In re Uriarte*, Bar Docket No. 380–02 (BC May 30, 2003), the Board emphasized that unlike Mr. Schlemmer's actions, Mr. Uriarte communicated with the client after failing to file a brief with the Board of Immigration Appeals ("the BIA"):

> In our view, *Uriarte* involved somewhat less serious misconduct than that here. The [R]espondent's failure to file the brief with the BIA resulted from a breakdown in office procedures. When the respondent became aware of the problem, he consulted with his client. Here, Respondent affirmatively decided not to file an appeal, notwithstanding his knowledge that attempts to advise his client that $320 was insufficient had been unsuccessful. Respondent could have preserved his client's rights by simply noting the appeal—a clerical step—and paying the $110 filing fee, acts for which the $320 was clearly sufficient, but was concerned that the BIA might not let him withdraw later.

Order of the Board on Professional Responsibility, Bar Docket Nos. 444–99 & 066–00, June 16, 2004 ("Order"), at 7. Thus, the Board regarded Mr. Uriarte's misconduct as less serious than that of Mr. Schlemmer.

The Board also focused on *In re Cohen*, Bar Docket No. 042–98 (BC March 4, 2003), a case in which the respondent filed a motion to reopen or reconsider a decision of the Immigration Court denying his client asylum, rather than lodging a notice of appeal. He missed the thirty-day filing requirement for an appeal. In contrast to Mr. Schlemmer's action, Mr. Cohen's misconduct resulted from ignorance. The

---

**1.** Rule 1.3(a): "A lawyer shall represent a client zealously and diligently within the bounds of the law."

**2.** Rule 1.4(a): "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

Board concluded that Mr. Schlemmer's failure to notice an appeal was "more serious" than Mr. Cohen's action because "it was not the product of ignorance or negligence, but rather was deliberate, and would have constituted intentional neglect except for Mr. Schlemmer's mistaken belief that he had adequately communicated his fee requirement to [his client]." Order at 8.

The third informal admonition case addressed by the Board was *In re Allen*, Bar Docket No. 234–96 (BC May 7, 2001). There, the respondent missed a hearing at the Immigration Court, failed to file a waiver of joint petition requirement after a client's divorce, and did not file a timely notice of appeal. Bar Counsel found that Mr. Allen's failure to file an appeal resulted from "negligence." The Board distinguished *In re Allen* from Mr. Schlemmer's case:

> In contrast with *Allen* . . . , [Mr. Schlemmer's] decision not to note the appeal was not the result of negligence but was instead deliberate. [He] knew that his client had put up $320; he knew that attempts to reach the client had been unsuccessful; and he decided not to use the $320 to pay the filing fee and notice the appeal out of concern that he might not later be allowed to withdraw.

Order at 10.

After discussing and distinguishing these three informal admonition cases, the Board proceeded to determine an appropriate sanction by focusing on a wide range of sanctions—suspension, public censure, Board reprimand and informal admonition by Bar Counsel. The Board mentioned *In re Fowler*, 642 A.2d 1327 (D.C.1994), a case with facts similar to those in Mr. Schlemmer's case.[3] Mr.

Fowler failed to file an appeal because he did not receive the fee he demanded in advance. However, the Board cited *In re Fowler* because it is "[t]he example closest factually" to Mr. Schlemmer's case; the Board also used that case to point out that Mr. Schlemmer's misconduct was less serious than that of Mr. Fowler, and hence, the sanction of a thirty-day suspension, imposed on Mr. Fowler, was inappropriate for Mr. Schlemmer.

Following its discussion of several cases which resulted in a public censure sanction, the Board drew preliminary conclusions about the nature of Mr. Schlemmer's conduct and the inappropriateness of either a public censure or an informal admonition:

> [Mr. Schlemmer's] misconduct does appear less serious than that for which public censure has been imposed [in identified] cases. On the other hand, although we agree that Bar Counsel failed to prove a violation of Rule 1.3(b) (intentional failure to pursue client's lawful objectives), there is an element of intentionality in Respondent's conduct that is not seen in the informal admonition cases of *Uriarte, Allen*, and *Cohen*, where the misconduct resulted from breakdowns in office procedures, incomplete or erroneous understanding of appeal procedures, and/or negligence. Respondent knew that [his client] had deposited $320, and he knew that efforts to reach [his client] to advise him that the $320 was insufficient had not been successful. He affirmatively decided not to note the appeal, notwithstanding that $320 would cover his time and the filing fee, apparently because of concerns that he might not later be al-

---

3. Mr. Schlemmer challenged the Board's citation to *In re Fowler*, but apparently misunderstood the Board's purpose in citing the case.

*In re Fowler* was not critical to the Board's disposition of Mr. Schlemmer's case.

lowed to withdraw if [his client] failed to make additional payments. As noted by Bar Counsel, in this regard [Mr. Schlemmer] was acting in his own personal financial interest.

Order at 14–15. After finding both public censure and informal admonition to be inappropriate as a sanction for Mr. Schlemmer's misconduct, the Board examined three reprimand cases: *In re Karr,* Bar Docket No. 322–89 (BPR May 10, 1999) (respondent was charged with neglect but "the Board found that much of the conduct underlying the charges did not constitute neglect"), *In re Gregory,* Bar Docket No. 218–86 (BPR April 7, 1988) (the respondent failed to appear at three court hearings and was charged with neglect and conduct prejudicial to the administration of justice, but was "genuinely regretful of his conduct"), and *In re Duvall,* Bar Docket No. 42–86 (BPR February 12, 1987) (respondent was ordered more than once to file a brief but failed to do so because "she had been overwhelmed by financial problems and other work commitments"). Based upon its total analysis of cases involving a wide range of sanctions, the Board decided that a reprimand was the appropriate sanction for Mr. Schlemmer's misconduct:

> Given our conclusion that [Mr. Schlemmer's] culpability may be less than in the public censure cases . . ., we have determined that a Board reprimand is the appropriate sanction. It may seem anomalous to treat Respondent's failure to take action, where he believed he was not obligated to act, as more serious than situations involving neglect or incompetence such as found

in *Uriarte, Cohen,* and *Allen,* where there is no question that the obligation exists. But there are other considerations present here. In our original analysis of this matter, we wrestled with the question of whether Respondent's conduct constituted intentional neglect under Rule 1.3(b); while we did not find intentional neglect, we did emphasize the obligation of [District of Columbia] attorneys to ensure that their fee arrangements are understood by their clients . . . .

> We think the sanction here should also reinforce the message that members of our Bar must take pains to be clear in their communications on fees, and should "tread lightly" when considering a refusal to act to protect a client's interests due to questions about payment of fees.

Order at 16–17.[4]

## ANALYSIS

■ Mr. Schlemmer contends that a Board reprimand is inappropriate, and that an informal admonition is the appropriate sanction. He asserts in his main brief, without addressing the Board's detailed discussions of three informal admonition cases: "The Board has not demonstrated that [Mr. Schlemmer's] misconduct at issue is different from that involved in *Uriarte, Cohen,* and *Allen.* Those cases as analyzed by this court strongly suggest that the appropriate sanction . . . is an informal admonition." Bar Counsel emphasizes the Board's comparison of Mr. Schlemmer's case with three Board reprimand cases, and contends that the Board

---

4. Rule 1.3(b):
    (b) A lawyer shall not intentionally:
    (1) Fail to seek the lawful objectives of a client through reasonably available means permitted by law and the disciplinary rules; or

    (2) Prejudice or damage a client through reasonably available means permitted by law and the disciplinary rules.

"exercised its own judgment" and gave " 'reasonable consideration' to all types of cases."

■■■ Our standard of review is a deferential one. As we said in *Schlemmer I*, "we recognize the strong presumption in favor of the Board's recommended sanction." *Id.* at 660; *see also In re Goffe*, 641 A.2d 458, 463 (D.C.1994). D.C. Bar Rule XI, § 9(g)(1) states, in pertinent part, that this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." In that regard, we have said that: "Generally speaking, if the Board's recommended sanction falls within a range of acceptable outcomes, it will be adopted and imposed." *In re Goffe*, 641 A.2d at 463–64. Sanctions are "a means of assuring the attorney's fitness to practice and for protecting the public from misconduct...." *In re Temple*, 596 A.2d 585, 591 (D.C.1991).

D.C. Bar Rule XI, § 3 generally permits imposition of three lesser sanctions than disbarment or suspension: censure by the court (public censure), reprimand by the Board, and informal admonition by Bar Counsel. Rule XI, § 3(3), (4), and (5). Although these lesser sanctions are similar in that they all involve some degree of public disclosure, they nevertheless reflect a descending order of severity from public censure to informal admonition. Cases involving a reprimand, imposed by the Board, or an informal admonition, imposed by Bar Counsel, appear on the District of Columbia Bar Association website, *see Schlemmer I*, 840 A.2d at 662 and n. 11, and are summarized in the WASHINGTON LAWYER, the Official Journal of the District of Columbia Bar. In addition to

appearing elsewhere, orders of public censure, suspension or disbarment are published in the Atlantic Reporter.

While we have said in many of our reciprocal discipline cases that a reprimand is the "functional equivalent" of public censure, *see In re Laibstain*, 841 A.2d 1259, 1262 (D.C.2004), in practice it is treated as an informal action and does not receive as much public exposure as a public censure unless, as here, a respondent takes an exception to a reprimand, and the disposition is published in the Atlantic Reporter. Rule 13.7 of the Board's rules addresses an informal admonition and a reprimand together, and provides: "When the Board determines that the proceeding [against a member of the bar] should be concluded by an informal admonition, or by a reprimand, the Board shall direct Bar Counsel to informally admonish respondent in writing including a brief statement of the reasons therefor or the Board shall issue an order reprimanding respondent." Censure, suspension, and disbarment are treated together in Board Rule 13.9: "If the Board determines that the proceeding [against a member of the bar] should be concluded by a public censure, suspension, or disbarment, the Board shall promptly submit a report containing its findings and recommendation, together with the entire record to the Court." And, as we have indicated, dispositions in these cases appear in the Atlantic Reporter.

Based upon our review of the record and the cases cited by the Board in its Order, we are satisfied that the Board followed our remand directions to give "reasoned consideration to such admonitions that are brought to its attention, in order to avoid inconsistent dispositions for similar conduct." [5] *Schlemmer I*, 840 A.2d at 664. In

---

**5.** In his reply brief, Mr. Schlemmer faults the Board for not "discuss[ing]" three informal

admonitions dated May 27, 2004, and "announced in the September 2004 issue of the

*Schlemmer I,* we recognized that Mr. Schlemmer has been an exemplary member of the Bar. As we said: "The Board took notice of the Hearing Committee's findings with regard to mitigating factors, including Respondent's previously-unblemished record and his 'extraordinary efforts in voluntary, *pro bono* service to the immigrant community in the Washington area.'" *Id.* at 660 (footnote omitted). And, "the Board found that Respondent's misconduct stemmed from 'an honest but mistaken perception of his obligations to his client.'" *Id.* at 661–62. Despite these favorable considerations, however, Rule XI, § 9(g)(1) mandates that this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." We conclude that the sanction of a Board reprimand is appropriate in Mr. Schlemmer's case because it "falls within a ... range of acceptable outcomes." [6] *In re Goffe, supra,* 641 A.2d at 463–64.

WASHINGTON LAWYER, the Journal of the D.C. Bar"—*In re Freedman,* Bar Docket No. 2004–D078, *In re Levine,* Bar Docket No. 300–00, and *In re Sager,* Bar Docket Nos. 2003–D460 & 2003–D476. He notes that the same Bar Counsel attorney assigned to those informal admonition cases also handled Mr. Schlemmer's case. Since Bar Counsel submitted its brief on remand in this case to the Board on February 11, 2004, it could not have called the Board's attention to these cases because they were not decided until May 27, 2004. Nor did Bar Counsel have an opportunity to respond to Mr. Schlemmer's citation to these three cases in writing since they were not mentioned until Mr. Schlemmer filed his reply brief.

We have reviewed the three cases and conclude that they are distinguishable from Mr. Schlemmer's case. In *In re Freedman,* Bar Counsel found that there was undue delay in respondent's filing of a motion to reopen a case, failure to inform the client of that delay, and the drafting of an improper release from liability by the respondent which the client signed. Bar Counsel found mitigating circumstances and stated that an informal admonition was imposed rather than a more severe sanction, in part, because there was no "intentional delay," "no evidence that delay is a recurring problem in [r]espondent's practice," the release from malpractice liability was not "used ... to take advantage of an unrepresented former client," the respondent "refunded the client's retainer fee and provided the file to him," and "concede[d] that the language in the receipt is improper and will not be used in the future." Mr. Schlemmer did more than simply delay a filing unduly, he made a decision not to file the appeal for his client despite the fact that he had in hand enough money from the client at least to notice the appeal. In *In re Levine,* the respondent, unlike Mr. Schlemmer, actually made a filing in the client's case, albeit one that did not comport with the requirements of case law. And, in *In re Sager,* the respondent was charged with several violations of the Rules of Professional Responsibility in his handling of two matters because he did not render diligent and competent legal services to protect the clients' interests. Bar Counsel decided on an informal admonition because the respondent had "no prior disciplinary violations in this jurisdiction, ... cooperated fully with [Bar Counsel] and ... represent[ed] that [he had] closed [his] law practice." In contrast to Mr. Sager, Mr. Schlemmer plans to continue with his practice.

6. We are unpersuaded by Mr. Schlemmer's argument that he "is treated differently than other attorneys similarly situated," in violation of the Due Process Clause of the Fifth Amendment. He claims that "[t]he imposition of a reprimand will damage his standing or associations in the legal community [and] ... will impose a stigma upon him that may decrease cases referred to him by other attorneys or otherwise affect his ability to earn a livelihood." We have said repeatedly: "Our purpose in conducting disciplinary proceedings and imposing sanctions is not to punish the attorney," *In re Steele,* 630 A.2d 196, 200, (D.C.1993), but to protect "the legal profession, the courts, and the public," *In re Lenoir,* 604 A.2d 14, 15 (D.C.1992). As the Board stressed in its Order, there was no finding of intentional neglect in Mr. Schlemmer's case, but a Board reprimand was appropriate be-

Accordingly, for the foregoing reasons, we adopt the recommendation of the Board to sanction Mr. Schlemmer with a Board reprimand.

*So ordered.*

cause it "should ... reinforce the message that members of our Bar must take pains to be clear in their communications on fees, and should 'tread lightly' when considering a refusal to act to protect a client's interests due to questions about payment of fees." Order at 17.

Mr. Schlemmer's record as an attorney since his admission to the D.C. Bar in July 1988, is exemplary. Except for this one instance of misconduct which has resulted in one of the lesser sanctions that could have been imposed, he has ably managed a heavy caseload—estimated to be in the "thousands"—as an immigration lawyer, and has dedicated substantial time to rendering voluntary, *pro bono* service to immigrants in Washington, D.C. Six letters from charitable organizations praising his *pro bono* services to immigrants, including Irish, Vietnamese, Peruvian, Haitian, and Nicaraguan immigrants, were submitted to the Hearing Committee that heard his case. Given his track record and the praise bestowed upon him by organizations that assist immigrants, we do not regard this single lesser sanction as a stigma that will negatively impact his practice.