### In re Vincent M. AMBERLY, Respondent.

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 08–BG–29.**

District of Columbia Court of Appeals.

Argued May 14, 2009.
Decided June 25, 2009.

---

Timothy J. Battle, Alexandria, VA, for respondent.

William R. Ross, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Before KRAMER and FISHER, Associate Judges, and BELSON, Senior Judge.

FISHER, Associate Judge:

In this reciprocal discipline proceeding, the Board on Professional Responsibility ("Board") recommends that we impose the substantially different discipline of a thirty-day suspension. We accept the Board's recommendation.

## I.

This proceeding arises from allegations that Vincent Mark Amberly, an attorney licensed to practice law in the Commonwealth of Virginia and the District of Columbia,[1] lied about attempting to serve a counterclaim on Martin B. Katz, a self-represented opposing party, in the General District Court of Fairfax County, Virginia, on September 19, 2005.

The Virginia State Bar Disciplinary Board ("Virginia Board") specifically found (1) that Mr. Amberly's "statements in the certificate of service that he attempted hand delivery of the Counterclaim to [Mr. Katz], and that [Mr. Katz] refused such delivery, were false, and were made by [Mr. Amberly] with knowledge of their falsity"; (2) that Mr. Amberly "made representation as contained in the foregoing certificate of service in open court . . . in

response to [Mr. Katz's] motion to dismiss the counterclaim"; and (3) that in a December 19, 2005, letter to Bar Counsel in Virginia, Mr. Amberly made "misleading" representations that "were calculated to induce Bar Counsel to conclude a) that [Mr. Amberly] had in fact furnished [Mr. Katz] with a copy of the Counterclaim on September 19, 2005, and b) that [Mr. Amberly] first learned from [Mr. Katz] on September 30, 2005, that [Mr. Katz] did not have a copy of the Counterclaim."

In light of these facts, the Virginia Board found by clear and convincing evidence that Mr. Amberly had violated four provisions of the Virginia Rules of Professional Conduct-that he (1) knowingly made a false statement of fact or law to a tribunal in violation of Rule 3.3; (2) knowingly made a false statement of fact or law in the course of representing a client (Rule 4.1); (3) knowingly made a false statement of material fact in connection with a disciplinary matter (Rule 8.1); and (4) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on his fitness to practice law (Rule 8.4). The Virginia Board ordered "that the Respondent receive an Admonition with Terms" and that he complete six hours of Continuing Legal Education within a year. Failure to comply with those terms would "result in a hearing to determine what sanctions are appropriate."

## II.

■ Our Board did not find, and respondent has not established, by clear and convincing evidence, that the proceedings

---

1. Mr. Amberly was admitted to the practice of law in the District of Columbia by examination on October 15, 1982. He was administratively suspended from the D.C. Bar on September 30, 2003, for failure to pay dues and to file an annual registration statement. Mr. Amberly became an inactive member of the D.C. Bar in good standing on November 20, 2007 (a few days after a panel of the Virginia State Bar Disciplinary Board heard his case).

in Virginia deprived him of due process, D.C. Bar R. XI, § 11(c)(1); that there was infirmity of proof, *id.,* § 11(c)(2); or that his conduct there would not constitute misconduct here. *Id.,* § 11(c)(5). " 'Thus, we must treat respondent's misconduct as conclusively established by the decision' " of the Virginia Board. *In re Barrett,* 966 A.2d 862, 863 (D.C.2009) (citing *In re DeMaio,* 893 A.2d 583, 586 (D.C.2006)).

Although in his brief and at oral argument, Mr. Amberly's counsel frequently suggested that the Virginia Board misunderstood the facts, he specifically requests that we impose identical reciprocal discipline. The Board on Professional Responsibility recommends that we impose the "substantially different discipline of a 30-day suspension."

■ "At the outset, we note that the authority of the Board to recommend greater discipline, and of this court to impose it, is well established.[2] Determining whether the 'substantially different discipline' exception warrants a greater or lesser sanction involves a two-step inquiry. First, we must determine if the misconduct would not have resulted in the same punishment here as it did in the disciplining jurisdiction.... Second, if the discipline imposed in the District of Columbia would be different from that of the original disci-

plining court, we must then decide whether the difference is 'substantial.' " *Barrett,* 966 A.2d at 864 (internal citations and quotation marks omitted); *In re Demos,* 875 A.2d 636, 642 (D.C.2005).

■ Nevertheless, where an attorney licensed in the District of Columbia is disciplined in another jurisdiction, there is a presumption in favor of imposing identical discipline here. *See In re Jacoby,* 945 A.2d 1193, 1197 (D.C.2008) (There is "a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original jurisdiction.") (citing *Demos,* 875 A.2d at 641). When Bar Counsel recommends a greater sanction than that imposed by another jurisdiction, he bears the burden of demonstrating by clear and convincing evidence that a more severe sanction is appropriate. *See In re Jacoby,* 945 A.2d at 1198 (interpreting D.C. Bar Rule XI (f) to allow Bar Counsel to "rely upon the 'substantially different discipline' exception [and] argu[e] for a greater sanction") (citations omitted).

### III.

■ We conclude that Bar Counsel has met his burden here. "[H]onesty is basic to the practice of law." *In re Uchen-*

---

**2.** Shortly before the Board on Professional Responsibility issued its Report and Recommendation on June 13, 2008, we announced amendments to our rules governing reciprocal discipline. The amended rules, which became effective August 1, 2008, provide that reciprocal discipline "shall not be imposed for sanctions by a disciplining court such as public censure or reprimand that do not include suspension or probation. For sanctions by another disciplining court that do not include suspension or probation, the Court shall order publication of the fact of that discipline by appropriate means in this jurisdiction." D.C. Bar R. XI, § 11(c) (effective August 1, 2008). In a July 21, 2008, Order, the Board adopted internal rules governing the applica-

tion of amended Rule XI to pending matters. The Order provided that the amended rule "governs any order of a disciplining court filed by Bar Counsel with the Court on or after that date and disciplining court orders that are then pending at the Court but have not yet been referred to the Board for its reciprocal discipline recommendation." Under the Board's rules, amended Rule XI does not apply to Mr. Amberly's discipline. Mr. Amberly has not challenged the validity of the Board's rules, and we perceive no unfairness in applying to him the rules governing reciprocal discipline that were in effect both at the time of his misconduct and when the Virginia Board issued its ruling.

*du*, 812 A.2d 933, 939 (D.C.2002) (citations and punctuation omitted). Consequently, it is appropriate for us to discipline an attorney for dishonesty, even where it appears that the attorney had little or nothing to gain by making misleading representations. *See id.* at 940 ("[A] deliberate falsification of documents is sufficient to support a finding of dishonesty, regardless of its motivation."). "Sanctions for dishonesty range generally from 30 days suspension to disbarment." *Id.* at 941 (citing *In re Lopes*, 770 A.2d 561, 569 (D.C.2001)).

We have imposed a sanction of suspension in numerous cases involving dishonesty. In *Uchendu*, for example, we suspended an attorney who falsified signatures on documents he filed with the Probate Division of the Superior Court, some of which he also notarized. The Board on Professional Responsibility noted several mitigating factors, including that this was Mr. Uchendu's first disciplinary offense, that he had his clients' permission to sign their names, that his actions did "not prejudice[ ] his clients or the court's decision-making," and that the falsified information was not "substantive." *Id.* at 936. The Board also took into account several aggravating factors, including Mr. Uchendu's "persistence in making false signatures and notarizations"; his notarization of documents despite being unfamiliar with the rules governing notaries public; and "his less than truthful recantation before the Hearing Committee of a stipulation he had made." *Id.* In that case we agreed with the Board's recommendation and imposed a thirty-day suspension. *Id.* at 942. In doing so, we recognized that "[a] falsely signed document that is submitted to a court is a false representation because the signature is misleading, even if the substance of the document is accurate." *Id.* at 939.

We considered comparable circumstances in *In re Reback*, 513 A.2d 226 (D.C.1986) (en banc). After a complaint was dismissed for failure of the respondents to bring it to issue, the two attorneys who worked on the case falsified their client's signature on an identical complaint, had that document notarized, and filed the complaint in court. *Id.* at 228. Taking into account factors of mitigation, including that the attorneys admitted their wrongdoing, were contrite, and cooperated fully throughout the disciplinary proceedings, we determined that a six-month suspension was appropriate. *Id.* at 233. Although *Reback* involved an act of dishonesty in connection with the signature on (but not the substance of) a complaint, we emphasized that "[a] lawyer's representation to the court must be as reliable as a statement under oath. The reliability of a lawyer's pleadings is guaranteed by the lawyer's membership in the bar." *Id.* at 231.

We also imposed a thirty-day suspension in *In re Owens*, 806 A.2d 1230, 1231 (D.C. 2002), where the attorney, in an attempt to avoid embarrassment and any adverse consequences to her client, made false statements to an administrative law judge "to cover up the fact that she had attempted to eavesdrop on testimony in violation of the judge's sequestration order." There, as here, the attorney's statements were false. Mr. Amberly has not pointed to any of our own cases where we have imposed a lesser sanction than suspension for conduct comparable to his.

Our case law is replete with instances in which we have suspended attorneys who have engaged in acts of dishonesty, and there should be no doubt that a suspension from the practice of law is substantially different from an admonition. We recognize that Mr. Amberly has no prior disciplinary history, but his conduct involved

serious acts of dishonesty for which a thirty-day suspension is appropriate.

### IV.

In light of the findings of the Virginia Board and our resolution of original proceedings involving comparable facts, we accept the Board's recommendation.[3] Respondent is hereby suspended from the practice of law in the District of Columbia for thirty days. *See* D.C. Bar R. XI § 14(f). For purposes of reinstatement, Mr. Amberly's suspension shall be deemed to run from the date he files an affidavit in compliance with D.C. Bar R. XI § 14(g). *See In re Slosberg*, 650 A.2d 1329, 1331–33 (D.C.1994).

*So ordered.*

---

**3.** The Board has not recommended, and we do not impose, a requirement that respondent demonstrate his fitness to practice law before his reinstatement to the District of Columbia Bar.