**In re Desmond P. FITZGERALD, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 461613).**

**No. 07–BG–1366.**

District of Columbia Court of Appeals.

Argued Sept. 21, 2009.

Decided Oct. 22, 2009.

Desmond P. FitzGerald, pro se.

**1.** On August 21, 2008, the Supreme Court of Florida approved the issuance of a public

William R. Ross, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Bar Counsel, were on the brief, for the Office of Bar Counsel.

Before REID and THOMPSON, Associate Judges, and KING, Senior Judge.

THOMPSON, Associate Judge:

Respondent Desmond P. FitzGerald has been a member of the District of Columbia Bar, with inactive status, since January 8, 1999. On September 24, 2007, the Board of Bar Overseers of the Supreme Judicial Court of Massachusetts ("Massachusetts Board") issued an Order of Public Reprimand to respondent for violating Rules 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.7(b) (personal conflict of interest), and 1.16(a)(1) (failure to withdraw representation) of the Massachusetts Rules of Professional Conduct.[1] The Massachusetts Board notified Bar Counsel in this jurisdiction of respondent's disciplinary violations, and Bar Counsel filed a certified copy of the Order of Public Reprimand with this court on December 13, 2007. We issued an interim order on January 7, 2008, directing the Board on Professional Responsibility (the "Board") to advise the court as to whether (1) identical, greater or lesser discipline should be imposed as reciprocal discipline, or (2) the Board elected to proceed *de novo*. The Board issued its report on July 24, 2008, recommending that the court impose a 30-day suspension as "substantially different reciprocal discipline."

## I. The Governing Rule

If the Massachusetts discipline had been a suspensory sanction or disbarment, we would proceed immediately to our anal-

reprimand to respondent on the basis of the Massachusetts disciplinary action.

ysis of whether to accept the Board's recommendation, employing the "rebuttable presumption that the sanction imposed by this court in a reciprocal discipline case will be identical to that imposed by the original disciplining court." *In re Beattie,* 956 A.2d 84, 85 (D.C.2008) (citing *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992)). However, effective August 1, 2008, this court amended D.C. Bar R. XI, § 11(c) so that, in pertinent part, it now reads as follows:

> Standards for reciprocal discipline. Reciprocal discipline may be imposed whenever an attorney has been disbarred, suspended, or placed on probation by another disciplining court. *It shall not be imposed for sanctions by a disciplining court such as public censure or reprimand that do not include suspension or probation.* For sanctions by another disciplining court that do not include suspension or probation, the Court shall order publication of the fact of that discipline by appropriate means in this jurisdiction.

D.C. Bar R. XI, § 11(c) (italics added). Thus, amended Rule XI, § 11(c) establishes a change in our procedure for handling certain cases that we previously treated as reciprocal-discipline cases. If the amended rule applies in the instant case, it dictates that we impose no reciprocal discipline, but that we instead order Bar Counsel to publish the fact of the Massachusetts Order of Public Reprimand.

 We did not state in the amended rule whether it would apply to cases already pending before us as of August 1, 2008 (which was the posture of this case once the Board filed with us its July 24, 2008 Report and Recommendation).[2] Ordinarily, when there is a change in a statute or rule that effects a change in procedure, the amended law may be applied to all cases that are pending on the effective date of the change.[3] *See DeGroot v. De-Groot,* 939 A.2d 664, 670 n. 5 (D.C.2008) (citing *Duvall v. United States,* 676 A.2d 448, 450 (D.C.1996) ("laws which provide for changes in procedure may properly be applied to conduct which predated their enactment")).[4] That principle permits us

2. Through a July 21, 2008 order, the Board adopted rules prescribing "the manner in which the procedural changes set forth in the amendments to Rule XI will be applied to cases that straddle the effective date of August 1, 2008." Section 11 of the order provides that:

> The amended rule is effective August 1, 2008, and governs any order of a disciplining court filed by Bar Counsel with the Court on or after that date and disciplining court orders that are pending at the Court but have not yet been referred to the Board for its reciprocal discipline recommendation. It does not govern reciprocal discipline cases that are pending before the Board or a Hearing Committee on August 1, 2008.

*See* http://www.dcbar .org/for—lawyers/ethics/discipline/bpr—rules.cfm. The Board's order does not purport to prescribe how the Board (or this court) would handle cases such as this one, that were referred by the court to

the Board before August 1, 2008, but were no longer pending before the Board on August 1, 2008.

3. And, indeed, we applied the amended rule when we issued an order, dated August 18, 2008, in *In re Filomeno,* No. 07–BG–863, an uncontested reciprocal-discipline matter that originated from a May 18, 2007 order entered by the Supreme Court of New Jersey censuring the respondent. Our order instructed Bar Counsel to publish notice of the New Jersey discipline.

4. The amended rule can also be viewed as a rule that changes the sanction available in cases that are not original-discipline cases. A new law that *increases* penalties generally should be applied only to conduct that occurred after the new law was enacted. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (noting that a law that "increase[s] a party's

to follow the amended rule in this case. As Bar Counsel points out, however, we did not follow this course in our recent opinion in *In re Amberly*, 974 A.2d 270 (D.C.2009). The opinion in that case notes that, on June 13, 2008, after the Virginia State Bar Disciplinary Board had imposed the sanction of an admonition (with terms requiring that Mr. Amberly complete six hours of continuing legal education within a year), the Board recommended to this court that we impose the substantially different discipline of a 30–day suspension. Explaining that we "perceive[d] no unfairness in applying to [Mr. Amberly] the rules governing reciprocal discipline that were in effect both at the time of his misconduct and when the Virginia Board issued its ruling," *id.* at 273 n. 2, we applied the pre-August 1, 2008 rule, and we went on to accept the Board's recommendation. Because of this precedent, because we similarly perceive no unfairness in applying the previous rules here, and because Bar Counsel informs us that there are few if any other pending matters that straddle the August 1, 2008, effective date of the new rule and that will present a similar issue about which rule to apply, we have determined to resolve this case under the pre-August 1, 2008 rule. At the same time, as we proceed to our analysis of whether to impose identical or different reciprocal discipline, we deem it appropriate to treat the result that would have ensued under application of the new rule— publication of the Massachusetts order of

public reprimand—as a factor that weighs at least somewhat in favor of identical reciprocal discipline (a public reprimand) and weighs against imposition of a (more severe) suspensory sanction.

## II. Background and the Massachusetts Discipline

In 1998, respondent began representing a client who sought political asylum in the United States. After an immigration judge denied the client's application on August 13, 1998, respondent filed a notice of appeal [5] "but failed to ensure that the notice of appeal was received by BIA within 30 days as required." [6] Although respondent promptly notified the client that the appeal had been dismissed, he did not inform the client of a possible claim of ineffective assistance of counsel as a result of the untimely filed notice of appeal. After the BIA dismissed the appeal on January 21, 1999, respondent filed a motion three days late to reconsider the dismissal, but "failed to ensure that the motion was received by BIA within 30 days of the BIA decisions as required." [7] The BIA denied the motion as untimely. Again, respondent informed the client that the motion had been denied, but he failed to inform the client that he may have an additional claim of ineffective assistance of counsel as a result of the untimely filed motion for reconsideration.

liability for past conduct" would have improper retroactive effect). Here, by contrast, applying the amended rule would subject respondent to a *lesser* disciplinary action in this jurisdiction than would have been required under the pre-August 1, 2008 rule.

5. The Board of Immigration Appeals (the "BIA") docketed the notice of appeal as having been filed on September 16, 1998.

6. This conduct occurred in September 1998, prior to respondent's admission to the District

of Columbia Bar (on January 8, 1999), but nonetheless may be a basis for reciprocal discipline in this jurisdiction. *See In re Lebowitz*, 944 A.2d 444, 445 (D.C.2008) ("[I]t is irrelevant that [respondent's] misconduct preceded his admission to practice") (citation and quotation marks omitted).

7. The BIA docketed the motion as received on February 23, 1999.

Respondent continued to represent the client, pursuing alternative paths to legalize the client's immigration status, including a diversity immigrant visa program and an application for labor certification, but these efforts were not successful. In 2002, the client was arrested under a final deportation order. In June 2002, respondent filed a motion to reopen the asylum proceedings on the basis of alleged changed circumstances in the client's homeland.

The client retained new counsel in July 2002. Successor counsel pursued reopening of the proceedings on the basis of both ineffective assistance of counsel and changed circumstances in the client's homeland. Both the BIA and the United States Court of Appeals for the First Circuit rejected those arguments, and the client ultimately was deported.[8]

In the disciplinary proceedings that followed in Massachusetts, respondent and Massachusetts Bar Counsel signed a stipulation in which they agreed to waive an evidentiary hearing and to recommend a public reprimand based on respondent's admission that his conduct violated the Massachusetts Rules of Professional Conduct.[9] The Massachusetts Board accepted the stipulation and found that (1) respondent's failure to file timely his client's notice of appeal and motion to reconsider was conduct in violation of Mass. R. Prof. C. 1.3; (2) respondent's "failure to withdraw as the client's counsel on the asylum claim and other immigration matters" or "to advise the client that the client had a potential claim against him for ineffective assistance of counsel, or of the risks of his remaining as counsel or of the benefits of retaining successor counsel to pursue a motion to reopen based on ineffective assistance of counsel" was conduct in violation of Mass. R. Prof. C. 1.1, 1.4(b), and 1.16(a)(1); and (3) respondent's continued representation after the BIA's dismissal and denial of respondent's motion to reconsider without disclosure of the potential conflict of interest, and without obtaining consent after consultation to the continued representation, constituted conduct in violation of Mass. R. Prof. C. 1.7(b).[10] As to the potential conflict of interest, the Massachusetts Board cited in particular respondent's failure to advise the client that his continued representation of the client after the notice of appeal and motion to reconsider were rejected as untimely "could be materially limited by [respondent's] personal interest in avoiding the filing of a disciplinary complaint" such as generally is required to re-open an immigration proceeding on the basis of a claim

---

**8.** *See Betouche v. Ashcroft*, 357 F.3d 147, 150 n. 4, 151–52 (1st Cir.2004).

**9.** In the event the Massachusetts Board rejected the stipulation, Respondent and Massachusetts Bar Counsel agreed that either party could void the stipulation agreement and demand an evidentiary hearing.

**10.** Mass. R. Prof. C. 1.1 requires lawyers to provide competent representation to a client. Mass. R. Prof. C. 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client[, and directs lawyers to] represent a client zealously within the bounds of the law." Mass R. Prof. C. 1.4(b) requires lawyers to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Mass. R. Prof. C. 1.7(b)(1)-(2) prohibits a lawyer from representing "a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless[] the lawyer reasonably believes the representation will not be adversely affected and []the client consents after consultation." Mass. R. Prof. C. 1.16(a)(1) requires lawyers to "withdraw from the representation of a client if the representation will result in violation of the rules of professional conduct or other law."

of ineffective assistance of counsel.[11]

### III. Analysis

The presumption in favor of identical reciprocal discipline "is rebutted only if [a party] demonstrates, or the face of the record reveals, by clear and convincing evidence the existence of one of the conditions enumerated in D.C. Bar R. XI, § 11(c)." *Beattie,* 956 A.2d at 85–86 (citation omitted).[12] Both the Board and Bar Counsel rely on the fourth exception, which provides that "[t]he misconduct established warrants substantially different discipline in the District of Columbia[.]"[13] D.C. Bar R. XI, § 11(c)(4).

■ In deciding whether to impose non-identical reciprocal discipline, we undertake a two-step inquiry. *In re Jacoby,* 945 A.2d 1193, 1199 (D.C.2008). " 'First, we determine if the misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction....' " *In re DeMaio,* 893 A.2d 583, 587 (D.C.2006) (quoting *In re Garner,* 576 A.2d 1356, 1357 (D.C.1990)). If we conclude that " 'the discipline imposed in this jurisdiction would be different from that of the disciplining court, we must then determine whether the difference is substantial.' " *Id.*

In its Report and Recommendation, the Board found the conduct for which Massachusetts disciplined respondent also constituted violations of D.C. Bar R. 1.3(a) (diligence); 1.4(b) (failure to communicate); 1.7(b) (personal conflict of interest); and 1.16 (failure to withdraw representation). The Board found that the "wide range" of discipline this jurisdiction has imposed for such violations in the context of immigration practice runs from informal admonition to suspension with a fitness requirement. The Board cited *In re Uriarte,* Bar Docket No. 380–02 (May 30, 2003) (informal admonition where attorney failed to file appellate brief as a result of a breakdown in office procedures (resulting in dismissal of client's appeal), failed to respond to an Immigration and Naturalization Service ("INS") pleading, and failed to explain adequately to the client the options for reopening proceedings);[14] *In re Cohen,* Bar Docket No. 042–98 (Mar. 4, 2003) (informal admonition after attorney filed a motion to reconsider (which did not stay

---

11. *See In re Lozada,* 19 I. & N. Dec. 637, 639 (B.I.A.1988).

12. Those conditions are as follows:
 (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
 (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or
 (3) The imposition of the same discipline by the Court would result in grave injustice; or
 (4) The misconduct established warrants substantially different discipline in the District of Columbia; or
 (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

13. "While the plain language of Rule XI, § 11(c) places the burden on the disciplined attorney to establish by clear and convincing evidence that a lesser sanction is warranted, the Office of Bar Counsel also has standing to object to the imposition of identical discipline...." *In re Zdravkovich,* 831 A.2d 964, 968–69 (D.C.2003). The "authority of the Board to recommend greater discipline, and of this court to impose it, [also] is well established." *In re Amberly,* 974 A.2d at 273.

14. Appropriately, the Board gave "reasoned consideration to such admonitions that are brought to its attention, in order to avoid inconsistent dispositions for similar conduct." *In re Schlemmer,* 870 A.2d 76, 80 (D.C.2005) (*"Schlemmer II"*) (quoting *In re Schlemmer,* 840 A.2d 657, 664 (D.C.2004) (*"Schlemmer I"*)).

the deportation order) instead of a notice of appeal and failed to inform client that she would be deported if she did not file a notice of appeal within 30 days); *In re Allen,* Bar Docket No. 234–96 (May 7, 2001) (informal admonition after attorney failed to attend an immigration-court hearing, failed to file a timely waiver, and failed to file a timely notice of appeal); *Schlemmer II,* 870 A.2d at 76–77 (approving Board reprimand of attorney who intentionally failed to file notice of appeal in immigration case as a result of a miscommunication regarding his fee schedule); *In re Cole,* 967 A.2d 1264 (D.C.2009) (accepting the Board's uncontested recommendation of a 30–day suspension where the attorney was retained to file a new asylum application, failed to file the application but falsely told the client that he had done so, did not tell the client about the deportation order that issued when the application was not received, did not move to reopen the proceedings, and did not file an appeal on the client's behalf); *In re Owusu,* 886 A.2d 536, 538 (D.C.2005) (uncontested 60–day suspension with fitness requirement where attorney filed application for adjustment to immigration status in the wrong place, resulting in its rejection, failed to appear at an interview, and abandoned client); *In re Perez,* 828 A.2d 206, 206–07 (D.C.2003) (per curiam) (uncontested 60–day suspension with fitness requirement for "protracted neglect and intentional conduct that resulted in prejudice and damage to a vulnerable client"); *In re Ryan,* 670 A.2d 375, 377–78 (D.C.1996) (uncontested four-month suspension with fitness requirement where attorney neglected matters for five separate immigration clients, refused to return client files, missed filing deadlines, failed to attend deportation hearing, and failed to file appeal); and *In re Ukwu,* 926 A.2d 1106, 1120, 1131–33 (D.C.2007) (two-year suspension with fitness requirement where attorney, who had previously been disciplined, failed to represent clients competently or diligently in multiple immigration matters, failed to file appellate brief, resulting in summary dismissal of the appeal, withdrew from representation without advising the client, and justified withdrawal by intentionally misrepresenting to the BIA that the client had not paid her fees).

Although concluding that respondent's "neglect was not pervasive and did not evidence abandonment of his client" and that respondent was "forthright to a degree" (in that he informed the client that his appeal had been dismissed and the motion to reconsider had been denied), the Board determined that respondent's violations would have warranted a "sanction significantly more severe than a reprimand" had the case arisen as an original-discipline matter. The Board distinguished this case from disciplinary matters involving neglect in immigration matters that have led to admonition on the ground that "Respondent's neglect and related violations resulted in serious prejudice to the client—his deportation."

For much the same reason, the Office of Bar Counsel initially urged the Board to recommend a 60–day suspension, but has since changed its position and is now in agreement with the Board that a 30–day suspension is appropriate.[15] Bar Counsel argues that even if the court is unable to conclude from the record that respondent's violations led to the client's deportation, the record contains evidence that respondent's actions resulted in "serious prejudice to the client"—namely, that the client

---

**15.** Bar Counsel acknowledges that respondent has no previous history of discipline, but asserts that the misconduct in issue "occurred less than two years after [respondent] was admitted to practice."

was unable to have his appeal "adjudicated on the merits" and did not have "the information he needed to make informed decisions concerning the representation" by respondent.

Respondent points out that the Massachusetts Board made no finding that the client was prejudiced, and he argues that the record evidence is insufficient for this court to conclude that respondent's client suffered prejudice as a result of respondent's misconduct.[16]

■ We agree with respondent. The stipulation accepted by the Massachusetts Board contains no statement that respondent's actions resulted in what our Board termed "serious prejudice" to the client. Quite the contrary, the stipulation recites that "even assuming no ultimate harm to the client," respondent's conduct in "twice filing pleadings too late for timely receipt" by the BIA warranted at least an admonition. Moreover, considering the First Circuit's opinion in *Betouche*,[17] we cannot conclude that the record clearly and convincingly establishes that respondent's conduct resulted in serious prejudice to the client.[18] In rejecting the client's challenge to BIA's rejection of the petition to reopen the asylum proceeding because of changed circumstances in his homeland, the First Circuit found that the client's assertions and the information he proffered about persistent problems in his homeland "severely undermine[d]" the client's position by suggesting that the "same conditions [had] been continuing" in the client's homeland since 1998. *Betouche*, 357 F.3d at 152 (italics omitted). The court also observed that "[a]s of the present appeal, Betouche has yet to make any attempt whatsoever to demonstrate any grounds for reversing the 1998 denial of his asylum application on its merits[,]" making it doubtful that the client could have met his burden to "establish at least a reasonable probability of prejudice resulting from [respondent's] failure to bring a timely appeal from the final de-

**16.** Respondent emphasizes in addition that his waiver of his right to an evidentiary hearing in Massachusetts was based on the stipulation to which the parties agreed in that case, which included no stipulation that respondent's conduct prejudiced the client. He argues that a decision by this court accepting the Board's recommendation that is premised on a finding of prejudice would violate his right to due process. We need not reach this issue because, for reasons we go on to explain, we decline to adopt the Board's recommendation that we impose discipline substantially different from the Massachusetts discipline.

**17.** We rely on the First Circuit's opinion in *Betouche* because the Massachusetts Board also cited the opinion in the "summary of charges giving rise to the reprimand" attached to the Order of Public Reprimand.

**18.** We readily agree with Bar Counsel that there likely is some prejudice to the client any time his lawyer's conduct fails to comply with the Rules of Professional Conduct because, at the very least, the lawyer's conduct diminish-

es the relationship of trust that the client has a right to expect. But this is not the sense in which courts have used the term "prejudice" when assessing the impact of attorney negligence or other professional misconduct. *Cf. Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (reasoning that, in cases involving claims of ineffective assistance of counsel, "the appropriate test for prejudice" entails a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome"); *Betouche*, 357 F.3d at 151 n. 8 (noting that an attorney's "failure to prosecute an immigration appeal—even if negligent—does not constitute prejudice, *per se*," and citing authority that the test for prejudice is whether "the result would have been different if counsel had carried through with an appeal to the [BIA] or to this court") (quotation marks omitted).

portation order." *Id.* at 151 n. 8.[19] In addition, the First Circuit opinion discloses that the BIA's denial of the client's ineffective-assistance-of-counsel claim, which was presented by his successor counsel, was denied not because of when it was filed, but because it was not accompanied by an affidavit describing in detail the agreement between the client and respondent and by evidence that the client had informed respondent about the ineffective-assistance allegations and afforded respondent an opportunity to respond (prerequisites for stating a claim of ineffective assistance in immigration matters). *Betouche*, 357 F.3d at 149–51 (citing *Lozada*, 19 I. & N. Dec. at 639). Thus, the First Circuit opinion strongly suggests that the failure of the ineffective-assistance-of-counsel claim must be laid at the feet of successor counsel, not at the feet of respondent. In light of all the foregoing, the record does not support the Board's finding of "serious prejudice" to the client from respondent's misconduct.

In addition, having considered the previous cases on which the Board relied in determining the range of discipline, we conclude that the conduct in issue here is most similar to the conduct involved in *Allen*, in which the discipline was a non-suspensory sanction (an informal admonition) that is similar to the public reprimand issued by Massachusetts.[20] In *Allen*, the attorney missed an Immigration Court hearing (because of inadequate procedures), and thereafter failed to file a timely appeal from denial of a motion to reopen the hearing, unreasonably delayed filing a petition that would have allowed the client to continue to pursue residency even after she was divorced from the original petitioner (her U.S.-citizen husband), failed to inform the client that a timely appeal had not been noted (thereby failing to give the client the information she needed to make an informed decision about whether to raise a claim of ineffectiveness of counsel as a basis to have the court reconsider the order of deportation), and failed to communicate with the client once she had been incarcerated pursuant to the deportation order.[21] Bar Counsel issued an informal-admonition letter after determining that the attorney had violated Rules that respondent here also violated: Rule 1.3(a), because due diligence required that the attorney file a prompt waiver application; Rule 1.4(a), because the attorney did not keep the client reasonably informed when she failed to file the appeal

---

**19.** In taking exception to the Board's Report and Recommendation, respondent submitted an affidavit in which he averred that his client, Mr. Betouche, gave testimony before the Immigration Court that was "completely contrary to his sworn statement that he had submitted with his asylum application[,]" testimony that included an acknowledgment that "he would be able to live safely at his grandmother's home in Algeria." Because neither the Massachusetts stipulation nor the summary of charges attached to the Order of Public Reprimand contains a statement or finding as to respondent's representation, we do not rely on it for our analysis of whether, as the Board determined, the record shows "serious prejudice" to the client.

**20.** We have noted that "censure by the court (public censure), reprimand by the Board, and informal admonition by Bar Counsel" are "similar in that they all involve some degree of public disclosure" (although they "reflect a descending order of severity from public censure to informal admonition"). *Schlemmer II*, 870 A.2d at 80.

**21.** The attorney did, however, make a number of efforts to assist the client, including filing a second (unsuccessful) motion to reopen, a second appeal, and a request for a stay of deportation; by writing to the client's congressional representative and to the INS director; and by turning over the client's files to successor counsel upon the client's request. Respondent likewise pursued alternative means to assist the client.

and when she failed to maintain adequate contact during the client's incarceration; and Rule 1.4(b), because the attorney did not inform the client that she had a claim of ineffective assistance of counsel that the client could have presented. Although the *Allen* letter of admonition did not cite Rule 1.7(b) (conflict of interest) or 1.16 (failure to withdraw representation), it appears to us that the facts that underlie the letter of admonition would also have supported a finding that Attorney Allen violated those rules as well.

### IV. Conclusion

"[I]n a reciprocal proceeding, when a greater sanction is sought in the District of Columbia, the record must affirmatively show that a greater sanction is warranted...." *Zilberberg*, 612 A.2d at 835. The record here does not show clearly and convincingly that respondent's conduct resulted in substantial prejudice to the client, the ground cited by the Board for its recommendation of discipline substantially different from (and more severe than) the Massachusetts Order of Public Reprimand. In addition, we conclude that if this matter had come to us an original matter, approval of a Board reprimand or other non-suspensory sanction would not have "foster[ed] a tendency toward inconsistent dispositions." D.C. Bar R. XI, § 9(h)(1). As the presumption in favor of identical reciprocal discipline has not been rebutted, we conclude that identical reciprocal discipline is warranted. Accordingly, we instruct the Board to sanction respondent with a Board reprimand.

*So ordered.*