27 A.3d 1109 (2011)
In re Theodore S. SILVA, Jr., Respondent.
A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 420236).
Nos. 08-BG-82, 09-BG-1582.
District of Columbia Court of Appeals.
Argued October 13, 2010.
Decided September 1, 2011.
*1110 Theodore S. Silva, Jr., Pro Se.
Julia L. Porter, Senior Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.
Before GLICKMAN and FISHER, Associate Judges, and PRYOR, Senior Judge.
GLICKMAN, Associate Judge:
Having found that respondent Theodore S. Silva, Jr., committed serious transgressions of the Rules of Professional Conduct, including criminal acts and intentional dishonesty, the Board on Professional Responsibility recommends that we suspend him from practicing law for a period of three years and require him to demonstrate his fitness as a condition of reinstatement. The Board's report is appended to this opinion. Respondent and Bar Counsel take only limited exceptions to it. Neither party objects in any material respect to the Board's factual findings or its conclusion that respondent violated Disciplinary Rules 8.4(b) and 8.4(c), among others. Bar Counsel, though, disagrees with the recommended sanction and urges us to disbar respondent. However, in the interests of consistency and the deference we owe the Board, we opt to follow its recommendation. Respondent agrees that the sanction recommended by the Board is appropriate in his case; his only substantial question concerns the date when his period of suspension from the practice of law commenced. Per our normal practice, we conclude that the effective date for reinstatement purposes is the date on which respondent fully complied with the notice and affidavit requirements of D.C. Bar Rule XI, § 14.[1]

I.
As described more fully in the Board's report, respondent's primary misconduct *1111 occurred in connection with his representation of a client in a commercial real estate development project. Respondent was tasked with the preparation and negotiation of an easement agreement between his client and adjacent property owners. This agreement needed to be finalized, executed, and filed with the Recorder of Deeds before construction could proceed. Respondent neglected the assignment, but when his law partner and the client inquired about the agreement, respondent falsely told them it was completed. He then forged and falsely notarized the signatures of the other necessary parties to the easement agreement he had drafted, and presented that bogus document to his client and the client's trustee for their signatures. Thereafter, respondent falsely assured his client and his law partner that he had recorded the easement agreement.
Respondent believed he could replace the false agreement he had created with a genuine one signed by all necessary parties, without anyone being the wiser, but he never got around to doing so. Meanwhile, his client, relying on his false representations, proceeded with the closing on the property in December 2005 and entered into a construction contract. The client was obligated to give formal notice to the adjacent landowners of the commencement of construction. In January 2006, respondent prepared and sent that notice to his client, representingfalsely that he had forwarded it to the neighboring owners as well.
Respondent's lies began to unravel when the client itself sent a copy of the notice to an attorney for one of the adjacent landowners. The attorney informed the client that the necessary easement agreement did not exist. Respondent initially told his client that the attorney was mistaken, but he soon admitted his misconduct. He attributed his errant behavior to his addiction to cocaine and other personal problems. Respondent's law firm incurred considerable expense to resolve the problem respondent had created and avoid material injury to the client. The firm terminated respondent and reported his misconduct to Bar Counsel.
The ensuing disciplinary proceedings are recounted in the Board's report, and we need not detail them here, except to note the following. In his dealings with Bar Counsel and the Hearing Committee, respondent acknowledged his wrongdoing but continued to ascribe it to his struggles with cocaine addiction and other problems. Respondent further represented that he had completed treatment and made progress in overcoming his addiction. As the Board explains, much of what respondent said in this connection was false, including his statement under oath at the hearing that he had stopped using cocaine in May 2006.[2] The Board rejects respondent's effort to blame his misconduct on his cocaine addiction and other personal problems, and it views respondent's dishonesty and misrepresentations during the disciplinary proceedings as a significant aggravating factor in making its sanction recommendation.

II.
In the words of the Board, which echo the findings of the Hearing Committee, "the record in this case demonstrates a pattern of deceit and intentional falsehood and misrepresentation that warrants *1112 a severe sanction."[3] In view of the aggravating factors present in this case, the Hearing Committee thought respondent should be disbarred, but the Board disagrees. Finding that comparable misconduct by other attorneys has resulted in discipline short of disbarment, it recommends a three-year suspension from the practice of law, coupled with a requirement that respondent demonstrate fitness as a condition of reinstatement. Bar Counsel would have us reject that recommendation and adopt that of the Hearing Committee instead.
We think a strong enough case for rejecting the Board's recommendation has not been made. A sanction recommendation from the Board "comes to us with a strong presumption in favor of its imposition."[4] Our Rules provide that we shall adopt the Board's recommended disposition "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted."[5] This Rule
endorses the Board's exercise of broad discretion in handing out discipline that is subject only to a general review for abuse in that discretion's exercise. The rule requires that we enforce a general sense of equality in the sanctions handed out, but it otherwise commands that we should respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable.[6]
Thus, "[g]enerally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed."[7]
Judged in accordance with these settled principles of deferential review, the Board's recommendation of a three-year suspension with a proof-of-fitness requirement is unimpeachable. That disposition is not inconsistent with the discipline we have ordered in comparable cases. We imposed three-year suspensions (with or without fitness), for example, in In re Kline[8] and In re Slaughter,[9] where the respondent attorneys' misconduct also involved dishonesty, forgery, other aggravating circumstances, and similar or identical Rule violations.[10] This is not a case, moreover, *1113 in which it can be said that the Board grossly underestimates the seriousness of the respondent's misconduct.[11] Perfect consistency is not achievable in this area; but as the Board states, the cases in which we have disbarred attorneys for dishonest conduct have been more egregious than this one, and typically have involved "prolonged misconduct involving dishonesty, misappropriation of client funds or actions that abused the attorney-client privilege."[12] Bar Counsel argues that respondent's false representations during the disciplinary process, including a false statement under oath at the hearing about his cocaine usage, weigh heavily in favor of disbarment. This is not a case, however, in which the attorney lied to cover up his misconduct,[13] and as the Board observes, false testimony "does not generally result in disbarment even when accompanied by dishonesty."[14] In sum, we cannot say that the Board's discretionary judgment as to the appropriate sanction is unreasonable, or that its recommendation falls outside "the wide range of acceptable outcomes."[15] Accordingly, we adopt it.[16]

III.
After respondent formally raised a so-called Kersey mitigation defense by filing an Acknowledgment of Disabilities and Addiction,[17] the Board issued an order imposing certain conditions on his continued practice of law in the District of Columbia pending the outcome of the proceedings. The Board amended this order on December 10, 2007. Recognizing that respondent was working as a contract attorney, the amended order required him to provide thirty days' notice to the Board and Bar Counsel if he intended to begin representing clients, so that the Board could consider appointing a monitor to supervise his *1114 practice at that time. So far as appears, respondent never provided such notice and continued for some time to work solely as a contract attorney without clients of his own. Subsequently, on May 21, 2010, after receiving the Board's report and recommendation, this court entered an interim order suspending respondent pending final action.[18] Several months later, on December 17, 2010, respondent submitted an affidavit pursuant to Rule XI, § 14, averring, inter alia, that he had no clients to whom notice of the suspension was due.[19]
Respondent argues that his license to practice law was suspended, as a practical matter, when the Board issued its December 10, 2007, order, and that his three-year suspension therefore should run from that date (in which case he would be entitled by now to apply for reinstatement). We disagree. The December 2007 order did not suspend respondent, and he continued to practice law in the District of Columbia, albeit as a contract attorney. But even if respondent had been suspended and had stopped practicing law in December 2007, he still would be ineligible for the nunc pro tunc treatment he requests because he did not comply with the notice and affidavit requirements of Rule XI, § 14 until much later (i.e., December 2010).[20]

IV.
Respondent is hereby suspended from the practice of law in the District of Columbia for three years, effective from the date on which he filed (or, if necessary, hereafter files) the affidavit required by D.C. Bar Rule XI, § 14 (g), and subject to the requirement that he demonstrate his fitness to resume the practice of law as a condition of his reinstatement.
So ordered.
NOTES
[1] In addition to the original matter that we discuss in this opinion, there is also before us a reciprocal discipline matter arising from a public reprimand issued by the Virginia State Bar Disciplinary Board to respondent in 2008. This reprimand arises from respondent's 2002 guilty plea in Virginia to possession of cocaine. The Board suggests that in lieu of reciprocal discipline, we direct Bar Counsel to publish notice of the Virginia disciplinary action on the D.C. Bar website. See D.C. Bar R. XI, § 11(c). However, we have declined to apply the amended provision of § 11(c) that the Board invokes here to a case, such as this one, that was pending when the amendment took effect. See In re Fitzgerald, 982 A.2d 743, 746 (D.C.2009). In the present circumstances, we agree with Bar Counsel that respondent's Virginia matter is one of the factors to be considered in determining an appropriate sanction for his misconduct and need not be handled separately. Cf. In re Thompson, 492 A.2d 866, 867 (D.C. 1985) ("The appropriate question . . . is simply this: If all of the matters were before the Board simultaneously, what would we recommend as the appropriate discipline?").
[2] To be fair, respondent corrected this misstatement when prodded by Bar Counsel, and he asserts that it was basically true and inaccurate only because he subsequently had a relapse several months later. Nonetheless, the Hearing Committee made a credibility determination that respondent initially lied.
[3] Report and Recommendation of the Board on Professional Responsibility (hereinafter, "Board Report"), set forth in the appendix to this opinion, at 26.
[4] In re Goffe, 641 A.2d 458, 463 (D.C.1994) (citation omitted).
[5] D.C. Bar R. XI, § 9(h)(1).
[6] Goffe, 641 A.2d at 464 n. 7 (quoting In re Haupt, 422 A.2d 768, 771 (D.C. 1980)).
[7] Id. at 463-64.
[8] 11 A.3d 261 (D.C.2011). The attorney's misconduct in Kline included, in addition to unauthorized use of client funds, "dishonesty and deceit toward both his client and an adversary to cover up the neglect of his client's case; the criminal act of forgery; the deliberate failure to communicate with his client about the status and direction of the case; and the deliberate frustration of the client's objective by settling the case, through a false agreement, without the client's permission." Id. at 265.
[9] 929 A.2d 433 (D.C.2007). In Slaughter, the attorney misrepresented to his law firm that he had been hired by the State of Arkansas on a contingent basis to handle an environmental lawsuit. His dishonest scheme included falsification and alteration of documents and forgery of an assistant attorney general's signature.
[10] See also In re Guberman, 978 A.2d 200 (D.C.2009) (eighteen-month suspension for attorney who falsified documents and falsely represented to his law firm that he had filed an appeal); In re Pennington, 921 A.2d 135 (D.C.2007) (two-year suspension with fitness requirement for attorney who, inter alia, falsified a settlement of her clients' case in order to conceal from them the fact of its dismissal); In re Steele, 868 A.2d 146 (D.C.2005) (three-year suspension with fitness requirement for attorney who lied to clients and submitted a fabricated subpoena).
[11] When this court disagrees with the Board as to the seriousness of the attorney's ethical violations, the Board's recommendation carries "less weight." In re Kennedy, 542 A.2d 1225, 1228 (D.C.1988). See, e.g., Pennington, 921 A.2d at 142 (rejecting recommendation of a thirty-day suspension where Board "seriously minimized" the misconduct in question).
[12] Board Report at 28. See In re Pelkey, 962 A.2d 268, 281 (D.C.2008); Pennington, 921 A.2d at 141; In re Goffe, 641 A.2d 458, 464-68 (D.C.1994); see also In re Cleaver-Bascombe, 986 A.2d 1191, 1199 (D.C.2010) (finding "flagrant" dishonesty meriting disbarment where attorney "submitted a `patently fraudulent' voucher seeking compensation from public funds for work she had not performed"); In re Corizzi, 803 A.2d 438, 443 (D.C.2002) (disbarring attorney for subornation of perjury and other misconduct "reflect[ing] a continuing and pervasive indifference to the obligations of honesty in the judicial system and to the duty of loyalty to the interests of his clients").
[13] Cf. Cleaver-Bascombe, 986 A.2d at 1200 ("[L]ying under oath on the part of an attorney for the purpose of attempting to cover-up previous misconduct is absolutely intolerable.") (quoting In re Cleaver-Bascombe, 892 A.2d 396, 412 (D.C.2006); internal quotation marks, ellipses, and brackets omitted).
[14] Board Report at 27. See, e.g., In re Daniel, 11 A.3d 291, 301 (D.C.2011).
[15] In point of fact, the difference between disbarment and a three-year suspension is not so great, for even a disbarred attorney may seek readmission to the Bar after five years.
[16] The fitness requirement, which respondent does not oppose, is amply justified in the Board's report. See In re Cater, 887 A.2d 1, 24-26 (D.C.2005).
[17] See generally In re Kersey, 520 A.2d 321 (D.C.1987); see also In re Marshall, 762 A.2d 530 (D.C.2000) (holding that a mitigation defense cannot be based on the attorney's addiction to illegal drugs).
[18] See D.C. Bar R. XI, § 9(g).
[19] The affidavit should have been filed within ten days of the suspension order. (Bar Counsel informed respondent of his responsibilities under Rule XI, § 14, at that time.) That aside, to our knowledge Bar Counsel has not questioned the affidavit's adequacy.
[20] See In re Soininen, 853 A.2d 712, 726-28 (D.C.2004).