In re Idus J. DANIEL, Jr., Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 405077).

No. 09–BG–916.

District of Columbia Court of Appeals.

Argued Oct. 28, 2010.
Decided Jan. 13, 2011.

Russell J. Hairston, argued the cause for respondent. Idus J. Daniel, Jr., filed a brief pro se.

William R. Ross, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Before RUIZ and OBERLY, Associate Judges, and FARRELL, Senior Judge.

OBERLY, Associate Judge:

This disciplinary case is before us on exceptions by respondent Idus J. Daniel, Jr., a member of the District of Columbia Bar, and by Bar Counsel to the Report and Recommendation of the Board on Professional Responsibility. The Board found that Daniel had committed one violation of Rule 1.15(a) of the District of Columbia Rules of Professional Conduct (commingling client and personal funds) and one violation of Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation by virtue of false statements he made to the Internal Revenue Service), and recommended a one-year suspension. Because we find that Bar Counsel proved an additional Rule 8.4(c) violation based on Daniel's dishonest and deceitful use of a purported IOLTA account and a client escrow account, and we also have concerns about Daniel's continuing fitness to practice law, we order a three-year suspension, with reinstatement

conditioned upon a showing of fitness, in accordance with D.C. Bar R. XI, § 16.

## I. Facts and Procedural History

The misconduct in this case arose out of Daniel's misuse of an IOLTA account and a client escrow account. An IOLTA account is "a pooled interest-bearing depository account for deposit of client funds that are nominal in amount or expected to be held for a short period of time." D.C. Bar R., App. B, Interest on Lawyers Trust Accounts Program (2007).[1] "The interest earned on those funds is then turned over to the District of Columbia Bar Foundation to be used for charitable purposes." *In re Pierson*, 690 A.2d 941, 942 n. 6 (D.C.1997). On April 11, 1996, Daniel opened an IOLTA account at Riggs Bank, in the name of "IDUS J. DANIEL, ATTORNEY AT LAW—CLIENTS' TRUST ACCOUNT (IOLTA)," with an account number ending in 329 ("account 329"). Between January 1, 2000, and at least June 30, 2002, Daniel used account 329 as a personal and/or business account. Daniel withdrew cash or wrote checks payable to "cash" for $1,337, and wrote checks from the account payable to Adrienne Daniel, a non-client ($3,800); rent ($1,600); telephone bills ($984.25); utilities ($178.84); and numerous retailers and organizations, none of which were clients. He also deposited into account 329, on January 7, 2000, a $300 check payable to "Natashira Harris [a client] or Idus Dan-

iels" [*sic*] and a $350 check from W. Thomas Stovall, II, Esquire for "January ofc. lease." On January 12, 2000, Daniel deposited a $1,000 check payable to "Natashira Harris or Atty Idus Daniels" [*sic*] and a $975.27 check from Vandy L. Jamison, Jr. The checks from Stovall and Jamison did not constitute "entrusted funds held for a client." On January 8, 2002, Daniel deposited a $3,000 check into the 329 account, payable to client "Rhonda Bennett & Idus J. Daniel, Esq., Her Attorney," which related to an insurance claim. He then wrote a $2,000 check from account 329 payable to Rhonda Bennett and identified as " 'client/settlement funds,' " which cleared on January 16, 2002. Between January 8 and January 16, 2002, Daniel withdrew $190 in cash and wrote checks to Margot Kelly ($600, for "rent-feb"), Anthony Hawkins ($100), and South Bowie Boys and Girls Club ($40).

On October 9, 1998, Daniel opened another account at Riggs Bank captioned "IDUS J. DANIEL JR ATTORNEY AT LAW—ESCROW FOR CLIENTS," with an account number ending in 676 ("account 676").[2] Between September 1, 2000, and June 30, 2002, Daniel deposited into account 676 checks totaling $55,717.50 from the Administrative Office of the United States Courts payable to Idus Daniel, which were earned legal fees and not entrusted client funds. In the same time

---

1. Effective August 1, 2010, this court amended the rules governing the IOLTA program to make participation mandatory for D.C. Bar lawyers in most circumstances. The amendments are not relevant to Daniel's case, and we therefore cite to the rules in effect at the time of Daniel's misconduct.

2. The record is unclear as to whether account 676 was an IOLTA account as that term is defined, or whether it was a client escrow account without the special attributes of an IOLTA account. Both the Hearing Commit-

tee and the Board refer to both accounts as IOLTA accounts, as does Bar Counsel. The record shows, however, that the account opening card for account 676 denominated it simply as an "escrow for clients." We conclude that the precise characterization of account 676 makes no difference because, as we discuss in this opinion, Daniel's misconduct included keeping personal and business money in account 676 even though that account, while denominated a *client* escrow account, seems to have had no client funds in it.

period, he also withdrew approximately $59,472.50 in cash and drew checks from account 676 payable to Idus J. Daniel ($7,500) and Adrienne Daniel ($7,500).

In 2001, Daniel retained the firm American Tax Relief for help in connection with taxes he owed to the IRS. However, by April 2003, Daniel was corresponding directly with the IRS about his tax debt. The IRS posed questions about Daniel's personal and business accounts after Daniel initiated the process of an Offer-in-Compromise, a method of voluntarily settling an outstanding IRS debt for less than the full amount owed. *See* 26 U.S.C. § 7122 (2006). The IRS had requested bank statements for all open accounts for the period between November 1, 2002, and February 28, 2003, for Daniel and all members of his household. In an April 9, 2003, letter from Daniel to an IRS agent, Daniel responded that he had "no account information to offer" and "no open accounts (personal or business)." Responding to a request for business bank statements from January 1, 2002, to February 28, 2003, Daniel stated "I do not maintain a business account due to previous seizures by IRS." During the time period about which the IRS had inquired, accounts 329 and 676 were open, and showed electronic debits from account 329 to "BALLY FITNESS" ($66, on November 4, 2002) and "BC HARRIS PUB" ($45.64, on November 7, 2002) and from account 676 to "Washington Gas" ($123.56, on February 11, 2003) and "EYE CARE-DR SCHW" ($171.97, on December 31, 2002).

The Office of Bar Counsel began investigating Daniel when it received notifications from Riggs Bank that Daniel's client trust accounts were overdrawn. On November 30, 2007, Bar Counsel filed a four-count Specification of Charges against Daniel alleging (1) dishonest identification of the 329 IOLTA account by labeling it as a trust account even though he knew that it was his personal and business account, in violation of Rule 8.4(c); (2) similarly dishonest identification of the 676 account, in violation of Rule 8.4(c); (3) commingling personal and client funds in the 329 account, in violation of Rule 1.15(a); and (4) dishonest statements to the IRS and concealment of assets, in violation of Rule 8.4(c), and criminal tax evasion, in violation of Rule 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects). Bar Counsel alleged that Rule 8.4(b) applied because Daniel violated any of three federal tax statutes, 26 U.S.C. § 7201 (2006) (tax evasion), 26 U.S.C. § 7203 (willful failure to supply information), or 26 U.S.C. § 7206 (concealment of property).

Daniel did not personally appear at the Hearing Committee's evidentiary hearing, but submitted an Affidavit in Lieu of Testimony in which he denied any wrongdoing, and argued that Bar Counsel's delay in bringing the charges had caused him "obvious prejudice." In his affidavit, Daniel claimed that after sending the April 9, 2003, letter to the IRS, he orally informed the agency that he had client trust accounts containing unearned attorney fees. The only evidence Daniel provided to supplement Bar Counsel's evidence, other than the affidavit, was a marketing letter from American Tax Relief to Daniel dated April 3, 2001, in which American Tax Relief described the services it could provide for taxpayers who hired the firm to assist in resolving tax disputes with the IRS.

On the basis of the evidence presented, the Committee found that Daniel "knowingly used his trust accounts as his personal and business bank accounts so that the funds would not be seized by the Internal Revenue Service." The Committee found that in his letter to the IRS, Daniel "know-

ingly, willfully and materially misrepresented … facts … regarding his assets." The Committee found no evidence supporting Daniel's claim that he had orally informed the IRS about his unearned attorney fees deposited in client trust accounts and, as mentioned, Daniel was not available for cross-examination because he chose not to appear at the hearing. The Committee further found that even if it credited Daniel's claim, that assertion was nonetheless "false or misleading" because Daniel maintained client trust accounts containing non-client funds that were responsive to the IRS's inquiry.

Applying its findings of fact to Bar Counsel's charges, the Hearing Committee concluded that Daniel had committed two violations of the Rules of Professional Conduct. First, because Daniel deposited both personal and client funds into the 329 account, Daniel commingled funds, in violation of Rule 1.15(a) (Count III). Second, the Committee determined that Daniel's statements to the IRS violated Rule 8.4(c), prohibiting dishonest conduct (Count IV). However, the Committee did not find clear and convincing evidence that the use of either account 329 or account 676 as personal and business accounts violated Rule 8.4(c) (Counts I and II), reasoning that nothing Daniel did in the management of those accounts misled his clients. The Committee also concluded that Bar Counsel had failed to prove by clear and convincing evidence that Daniel's conduct violated any criminal tax statutes, relying heavily on Bar Counsel's failure to present evidence on the elements required to prove a violation of the tax statutes cited, as well as the Committee's own lack of expertise in interpreting the tax laws. Accordingly, the Committee declined to hold that Daniel violated Rule 8.4(b) (Count IV). The Committee recommended a suspension of sixty days, taking into account Daniel's prior disciplinary history of three separate infor-mal admonishments, the fact that his dishonest conduct advanced his own interests, his multiple rule violations, and the lack of recognition of the wrongfulness of his actions.

Bar Counsel filed exceptions to the Hearing Committee's Findings of Fact, Conclusions of Law and Recommendation as to Sanction. Bar Counsel continued to press his argument that Daniel had engaged in additional rule violations beyond those found by the Hearing Committee. Specifically, Bar Counsel contended that, in addition to violating Rule 8.4(c) by lying to the IRS, Daniel had committed another violation of Rule 8.4(c) by concealing personal property in his trust accounts, and that he had violated Rule 8.4(b) by engaging in criminal tax evasion. Bar Counsel also took issue with the sixty-day suspension recommended by the Hearing Committee, arguing instead that respondent's misconduct warranted disbarment or, at a minimum, "a lengthy suspension coupled with a fitness requirement."

Daniel did not file an exception to the Hearing Committee's report. He did, however, respond to Bar Counsel's brief. In his response, Daniel urged the Board to adopt the Hearing Committee's recommended sanction rather than disbarment, for which Bar Counsel advocated. He also stated that he was "remorseful and regretful that he engaged in improper conduct impugning the integrity of the legal profession, and pledge[d] to refrain from any such conduct in the future."

The Board heard oral arguments on the matter on December 11, 2008. Daniel notified the Board one day before the scheduled argument that he would not be able to attend because he had "very personal commitments" that prevented his departure from North Carolina.

In its Report and Recommendation, the Board agreed with all of the Hearing Committee's findings and conclusions as to rule violations but not its proposed sanction. The Board determined that the Committee had not adequately taken into account Daniel's past disciplinary violations and his "failure to recognize that his conduct in dealing with the IRS violated the Rules of Professional Conduct." · The Board focused on Daniel's three prior instances of misconduct, expressing concern that they occurred over a relatively short time period and close in time to the client trust account violations. In part because Daniel's "pattern of misconduct" implicated his honor and integrity, and "evidence[d] a certain deviousness and lack of concern for the truth," the Board recommended a one-year suspension.

A majority of the Board found a fitness requirement unnecessary, holding that Bar Counsel had not met his burden of establishing by clear and convincing evidence "serious doubt" about Daniel's fitness to practice law, the standard established by *In re Cater*, 887 A.2d 1, 24–25 (D.C.2005). A two-person minority of the Board issued a separate statement, explaining why they would impose a fitness requirement. The minority believed that Daniel's actions revealed both "a lack of candor" and "a lack of respect for the truth." The minority members also cited Daniel's "nominal" participation in the disciplinary proceedings as further support for their concern that respondent lacked "the qualifications the Court expects of members of the Bar" and raised "serious questions about his integrity, trustworthiness and honesty."

Bar Counsel and Daniel both filed timely exceptions to the Board's Report and Recommendation. Before this court, Bar Counsel argues that he proved by clear and convincing evidence that Daniel committed criminal tax evasion, in violation of Rule 8.4(b), and that his use of the trust accounts to conceal assets was dishonest, an additional Rule 8.4(c) violation. Bar Counsel also takes exception to the Board's recommended one-year suspension, arguing that Daniel should be disbarred, or at least suspended for multiple years with a fitness requirement. Daniel asserts that he has not violated any rules, and that a one-year suspension is *"unduly harsh."* [Emphasis added.]

## II. Analysis

■■ When examining a Report and Recommendation from the Board on Professional Responsibility, "[t]he scope of our review ... is limited." *In re Bailey*, 883 A.2d 106, 115 (D.C.2005) (quotation marks omitted). We "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). "Whether the Board's determinations [as to what constitutes a rule violation] are characterized as findings of ultimate fact or conclusions of law, we owe them no deference; our review is *de novo*." *Cater*, 887 A.2d at 12.

### A. Daniel's Exceptions

■ We quickly dispense with Daniel's exceptions to the Board's Report and Recommendation. The only argument Daniel has preserved for review in this court is his challenge to the one-year suspension recommended by the Board. We discuss that issue in Section II.B.3, *infra*. Daniel did not raise before the Board any of the other issues raised in his brief to this court, and therefore he has waived them. *See In re Hines*, 482 A.2d 378, 383–84 (D.C.1984) (respondent "waived the issue by not raising it before the [Board]").

Although Daniel claims that he has *not* abandoned his delay argument, in proceedings before the Board he addressed this issue only as a mitigating factor to be considered in assessing an appropriate sanction. In any event, Daniel's delay argument is meritless because, as the Hearing Committee stated, Daniel has not shown any prejudice to his case as a result of delay. *See In re Williams*, 513 A.2d 793, 796 (D.C.1986) ("Any betrayal of the trust which the attorney is sworn to keep demands appropriate discipline; a delay in prosecution, without more, cannot override this necessity.").

■ Daniel also waived the argument that he did not violate Rule 1.15(a)'s prohibition against commingling client and personal funds in account 329 by not challenging the Hearing Committee's finding of a violation of that rule; to the contrary, Daniel's brief to the Board expressly stated that he "accept[ed] the findings of fact made by the Hearing Committee." In any event, there is overwhelming, not to mention clear and convincing, evidence that Daniel held both client funds and personal funds in the 329 account. Daniel's argument that he did not violate the "spirit" of Rule 1.15(a) holds no weight. *See In re Hessler*, 549 A.2d 700, 700 (D.C.1988) ("One of the most basic rules of fiduciary conduct is that the fiduciary must not commingle his own property with that held by him belonging to another. In particular, fiduciary funds must be kept separate and deposited in a special account.") (interpreting Disciplinary Rule 9–103(A), the predecessor to Rule 1.15(a) of the Rules of Professional Conduct).

■■ Finally, Daniel also waived any challenge to the Board's conclusion that his statements to the IRS violated Rule 8.4(c). Daniel's argument, raised for the first time in this court, that he never signed, executed, or attested to the April 9,

2003, letter to the IRS comes too late. He already has accepted the Hearing Committee's findings of fact. In addition, his assertion that the letter to the IRS does not support a finding of a violation of Rule 8.4(c) is wrong. Daniel admits that the statements in this letter were "not true." We have deemed even "technically true" answers to the IRS to be dishonest. *See In re Shorter*, 570 A.2d 760, 768 (D.C. 1990). Therefore, Daniel's "not true" statements are most assuredly dishonest.

### B. Bar Counsel's Exceptions

We turn next to Bar Counsel's exceptions to the Board's Report and Recommendation, rejecting his claim that the Board should have found a violation of Rule 8.4(b) based on respondent's alleged commission of a criminal act but accepting Bar Counsel's contention that he proved two violations of Rule 8.4(c) rather than just one. We also modify the sanction recommended by the Board to one more in keeping with the severity of respondent's misconduct, although we do not accept Bar Counsel's arguments in support of disbarment.

### 1. Commission of a Criminal Act

■ Like the Board, we cannot find a violation of Rule 8.4(b), "commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects," because there is insufficient evidence to prove that Daniel violated any criminal tax statute. The paucity of details relating to Daniel's tax obligations and interactions with the IRS is due both to the confidentiality of IRS records and to Daniel's consistent failure to appear in person at any of his disciplinary proceedings. We agree with the Board that much of the fault for the lack of evidence lies with Daniel, but it was Bar Counsel's burden to prove by

clear and convincing evidence that Daniel violated a criminal tax statute, and he has not done so.

## 2. Use of Client Trust Accounts as Personal and Business Accounts

 We agree with the Hearing Committee and the Board that Daniel violated Rule 8.4(c) by making dishonest statements to the IRS in his April 9, 2003, letter, in which he professed to have "no open accounts (personal or business)." Like Bar Counsel, however, we do not believe that the April 2003 letter was Daniel's only violation of Rule 8.4(c). Rather, we agree with Bar Counsel that Daniel's use of his client trust accounts as personal and business accounts to conceal his own money from the IRS was a separate and additional violation of Rule 8.4(c). Bar Counsel's exceptions to the Hearing Committee's report gave Daniel "sufficient notice" that he was seeking to prove two distinct violations of Rule 8.4(c). *See In re Kanu*, 5 A.3d 1, 7 (D.C.2010).

Designating the 329 account as an IOLTA account naturally gave "rise to the inference that it would hold client funds." *See Disciplinary Counsel v. Wise*, 108 Ohio St.3d 381, 843 N.E.2d 1198, 1200 (2006). But not only did the 329 account largely *not* hold client funds, the Hearing Committee found that the reason the account held Daniel's own funds was "so that the funds would not be seized by the Internal Revenue Service." The taxpayer information number ("TIN") on an IOLTA account must not be the lawyer's TIN; all D.C. IOLTA accounts bear the TIN of the D.C. Bar Foundation. *See* D.C. Bar Found., *Bank Frequently Asked Questions,* http://www.dcbarfoundation.org/index.php/banking-on-justiceiolta-program/for-banks/bank-frequently-asked-questions (last visited Jan. 10, 2011). The TIN re-

porting structure for IOLTA accounts thus facilitated the concealment of Daniel's personal money, which is exactly the behavior we have noted can give rise to a Rule 8.4(c) violation, at least when committed with dishonest intent. *Cf. In re Rivlin*, 856 A.2d 1086, 1096 (D.C.2004) (Appendix, Board Report) ("It is difficult to conclude that Respondent was using his trust account to hide funds from the IRS when he was using that same account to pay the IRS's lien."). Moreover, not only was Daniel's use of his IOLTA account to hide money from the IRS covert, but it clearly was done with "a dishonest intent," here "an intent to hide the lawyer's personal assets." *Id.* Thus, the key factor is dishonest intent, which the Hearing Committee found.

Moreover, our agreement with Bar Counsel that Daniel committed two violations of Rule 8.4(c) through his (mis)use of accounts 329 and 676 to conceal his personal and business assets from the IRS is not "double-counting." The violation found by the Hearing Committee and the Board was based on the single letter of April 9, 2003, that Daniel sent to the IRS and in which he claimed that he had no personal or business accounts even though both accounts 329 and 676 contained his personal and business funds. Beyond that single instance of violating Rule 8.4(c), however, Bar Counsel also introduced exhibits showing that Daniel violated the same rule by using these accounts for personal and non-client business as early as 2000 and continued "to use his 676 trust account as a personal bank account until at least November 30, 2005."

## 3. Sanction

 We adopt the Board's recommended disciplinary action " 'unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.' " *In*

*re Elgin,* 918 A.2d 362, 373 (D.C.2007) (quoting D.C. Bar R. XI, § 9(g) (2006)). A Board recommendation that "falls within the wide range of acceptable outcomes" ordinarily will be adopted and imposed. *See id.* at 376 (quotation marks omitted). But because the responsibility for the imposition of sanctions ultimately falls upon this court, "when the court disagrees with the Board as to the seriousness of the offense ... the Board's recommendations are accordingly granted less weight." *In re Bettis,* 855 A.2d 282, 287 (D.C.2004) (quotation marks omitted). Because we find that Daniel committed an additional violation of Rule 8.4(c), the Board's recommendation of a one-year suspension is an insufficient sanction, and we impose a three-year suspension. In addition, because we have serious doubts about Daniel's future conduct, he must show fitness as a condition of reinstatement.

### a. Length of Suspension

In determining the appropriate sanction, we consider but are not limited to: "(1) the seriousness of the conduct at issue; (2) the prejudice, if any, to the client which resulted from the conduct; (3) whether the conduct involved dishonesty and/or misrepresentation; (4) the presence or absence of violations of other provisions of the disciplinary rules[;] (5) whether the attorney had a previous disciplinary history; (6) whether or not the attorney acknowledged his or her wrongful conduct; and (7) circumstances in mitigation of the misconduct." *Elgin,* 918 A.2d at 376 (quotation marks omitted).

Although we appreciate that the Board considered many of these factors when it settled on a one-year suspension as the appropriate sanction, our finding of an additional violation of Rule 8.4(c) necessarily requires us to revisit the overall weight to be given to the Board's analysis. The seriousness of the conduct at issue increases with an additional violation of the rule prohibiting dishonest conduct. There is nothing more antithetical to the practice of law than dishonesty, and it cannot be condoned by those charged with protecting the public from unscrupulous conduct by lawyers. *See In re Hutchinson,* 534 A.2d 919, 924 (D.C.1987) (en banc) ("Lawyers have a greater duty than ordinary citizens to be scrupulously honest at all times, for honesty is 'basic' to the practice of law."). In addition, Daniel's dishonest use of the IOLTA and escrow accounts was possible only because he is a member of the bar; an ordinary citizen trying to escape his tax obligations does not have the option of opening accounts with TINs other than his own, or of misleading government investigators by hiding funds in accounts that ostensibly exist only for the protection of funds in the possession of a fiduciary. Daniel thus has shown himself willing to take advantage of his status as a member of the Bar for his own gain. He made a calculated effort to conceal funds from the IRS and to do so he exploited his position as an attorney, behavior that requires a serious sanction.

The Board did not expand upon the Hearing Committee's determination that Daniel had "completely failed to acknowledge his wrongdoing," but we note that his behavior subsequent to the Hearing Committee's recommendation reinforces Daniel's lack of remorse for or acknowledgment of his wrongful conduct. Although he once acknowledged his wrongdoing, in a brief to the Board, he has withdrawn any expression of remorse in his arguments before this court, thereby revealing the callous disregard with which he apparently views the disciplinary process. Daniel's lack of acknowledgment of misconduct also reflects on his moral fitness as an attorney, another factor we consider in determining the appropriate sanction. *See In*

*re Goffe,* 641 A.2d 458, 464–66 (D.C.1994) (comparing Goffe's "reluctance … to this day to indicate contrition or recognition of the seriousness of the offenses," with the contrition of other attorneys, who "quickly came to realize and freely acknowledge the totally unacceptable nature of their misconduct"). Daniel's continuing failure to acknowledge misconduct is a significant factor counseling in favor of a suspension longer than that recommended by the Board.

Daniel's misconduct, though serious, does not reach the level of misconduct of attorneys whom we have disbarred. *See, e.g., In re Cleaver–Bascombe,* 986 A.2d 1191, 1199 (D.C.2010) ("Where we have concluded that the attorney's conduct falls into a category of dishonesty of a *flagrant kind* we have held disbarment to be the appropriate sanction.") (emphasis added). We find Daniel's behavior most similar to the attorney sanctioned in *In re Moore,* 691 A.2d 1151 (D.C.1997). Moore pled guilty to one misdemeanor count of willful failure to file federal income tax returns. *See id.* at 1151. "When IRS investigators inquired about the returns, Moore directed an attorney in his office to lie on his behalf. In addition, Moore was found to have testified falsely concerning his income in divorce proceedings." *In re Slattery,* 767 A.2d 203, 217 (D.C.2001) (comparing Slattery's behavior to Moore's, as detailed in the Board's Report and Recommendation in Moore's case). On the basis of this behavior, the Board found that Moore committed multiple violations of the disciplinary rule prohibiting dishonest conduct (the predecessor to Rule 8.4(c)), and engaged in conduct prejudicial to the administration of justice. *See Moore,* 691 A.2d at 1151. Though Moore had committed a "serious crime," because he was convicted of a misdemeanor and his conduct did not involve moral turpitude, he was not subject to automatic disbarment under D.C.Code § 11–2503(a) (1996 Repl.). *See Moore,* 691 A.2d at 1151–52; *In re McBride,* 602 A.2d 626, 629 (D.C.1992) (en banc). Instead, the court ordered Moore suspended from the practice of law in the District of Columbia for three years. *Moore,* 691 A.2d at 1152.

▮ Similarly, Daniel commingled funds, a serious violation of Rule 1.15(a), but did not misappropriate, the more egregious Rule 1.15(a) violation, for which disbarment is the presumptive sanction absent simple negligence or extraordinary circumstances. *See In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc). Like Moore, Daniel also committed multiple violations of the rule prohibiting dishonest conduct. Finally, while Bar Counsel did not charge Daniel with conduct prejudicial to the administration of justice, in Daniel's affidavit to the Hearing Committee he certified under penalty of perjury that the trust accounts were "honestly and properly established and identified as trust accounts." He also explicitly denied violating Rule 1.15(a), commingling. The evidence established that both of these statements were untrue. False statements in a sworn affidavit cannot meaningfully be distinguished from false testimony, further reinforcing our view that Daniel's misconduct is sufficiently similar to Moore's to warrant the same sanction.

For the foregoing reasons, we suspend Daniel from the practice of law in the District of Columbia for a period of three years.

**b. Fitness as a Condition of Reinstatement**

▮ We also agree with the minority of the Board who would have imposed a fitness requirement as a condition of Daniel's reinstatement, because there is clear and convincing evidence of "serious doubt"

about Daniel's continuing fitness to practice law. See Cater, 887 A.2d at 24. We first note that the Board, in imposing a one-year suspension, cited three cases in which it found that the sanction imposed was "more appropriate to this matter" than the sixty days recommended by the Hearing Committee. The Board failed to note, however, that in all three of the cited cases, In re Powell, 898 A.2d 365 (D.C. 2006), In re Wright, 885 A.2d 315 (D.C. 2005), and In re Brown, 851 A.2d 1278 (D.C.2004), the Board not only imposed a one-year suspension but also added a requirement that the respondent demonstrate fitness as a condition of reinstatement.

■ Second, the Board did not specifically consider the factors cited in Cater (the "Roundtree Factors") that determine whether there is "serious doubt" about an attorney's fitness. These factors are " '(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.' " Cater, 887 A.2d at 21 (quoting In re Roundtree, 503 A.2d 1215, 1217 (D.C. 1985)).

The nature of the misconduct reveals that Daniel is comfortable acting dishonestly, and the circumstances show dishonest behavior over a number of years in activities both related specifically to the practice of law and to his responsibilities as a citizen. As to the second factor, Daniel continues to deny any misconduct in spite of clear and convincing evidence to the contrary. The recitation of his earlier submission that "he is remorseful and re-gretful that he engaged in improper conduct impugning the integrity of the legal profession" is difficult to believe when he continues to argue that he "did not violate the purpose or the spirit of Rule 1.15," that "he did not engage in dishonest conduct," and that his letter to the IRS, "although not entirely honest, was not entirely dishonest either."

Turning to the third factor, Daniel has not provided the court with evidence that he has righted any of his wrongs, specifically including resolution of outstanding tax deficiencies with the IRS. We have no doubt that if and when Daniel seeks reinstatement, his status with the IRS will be a relevant consideration. See In re Courtois, 931 A.2d 1015, 1016 (D.C.2007) (attorney seeking reinstatement following disbarment for tax evasion showed that he had reached an offer-in-compromise with the IRS). We note that Daniel will have the burden of proving, by clear and convincing evidence, that he "has the moral qualifications, competency, and learning in law required for readmission." D.C. Bar R. XI § 16(d)(1)(a). In applying that rule, the court will consider the third Roundtree factor, whether an attorney has taken steps since the discipline was imposed to "remedy past wrongs." See Courtois, 931 A.2d at 1015 (quotation marks omitted).

### III. Conclusion

Idus J. Daniel, Jr. is hereby suspended from the practice of law in the District of Columbia for a period of three years. As a condition of reinstatement, Daniel must prove fitness, pursuant to D.C. Bar R. XI, § 16.

So ordered.