*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-BG-0433

IN RE JEHAN A. CARTER, RESPONDENT.

A Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 1018067)

On Report and Recommendation of the
Board on Professional Responsibility
(Disciplinary Docket No. 2022-D138)
(Board Docket No. 22-BD-052)

(Argued February 11, 2025                                    Decided April 3, 2025)

*McGavock D. Reed, Jr.*, with whom *Jehan A. Carter*, pro se, was on the brief, for respondent.

*Theodore (Jack) Metzler*, Senior Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, *Julia L. Porter*, Deputy Disciplinary Counsel, and *Caroll G. Donayre*, Assistant Disciplinary Counsel, were on the brief, for the Office of the Disciplinary Counsel.

Before DEAHL, HOWARD, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: In 2016, respondent Jehan A. Carter, a member of the District of Columbia Bar, was representing Dominique Collier in connection with a lawsuit in California state court, and she moved to appear *pro hac vice*. Counsel for the other party opposed her motion and in doing so alleged that

Ms. Carter's law firm website included a profile for a fictitious attorney. In response, Ms. Carter falsely told the court that the attorney profile had been included in the website template she used and she had simply forgotten to delete it, when in fact she had copied the profile information verbatim from the website of an actual California lawyer and used a stock photograph for the attorney. The court rejected Ms. Carter's *pro hac vice* appearance, and Ms. Collier filed a complaint with the D.C. Bar.

In responding to the Office of Disciplinary Counsel's investigation of that complaint, Ms. Carter made a second false representation about the circumstances of the attorney profile incident.

Neither of the above misrepresentations is the subject of the bar disciplinary matter before us now; rather, this matter concerns a third, related false statement by Ms. Carter.At the same time she was negotiating a settlement of Disciplinary Counsel's initial investigation, Ms. Carter sued Ms. Collier in small claims court to attempt to recover her fee. In a small-claims filing, she claimed that Ms. Collier's bar complaint had been "dismissed because it was unsubstan[t]iated." But when Ms. Carter made this statement, Disciplinary Counsel's investigation—which would not have been initiated but for Ms. Collier's complaint—was very much ongoing. Indeed, approximately six weeks after Ms. Carter claimed that Ms. Collier's bar

complaint against her had been "dismissed," she signed an amended petition for negotiated disposition in which she acceded to a ninety-day suspension as a sanction for misconduct relating to her representation of Ms. Collier.

Once made aware of Ms. Carter's small claims filing, Disciplinary Counsel commenced another investigation. This investigation did not settle; instead, it went to a hearing before an Ad Hoc Hearing Committee, which found that Ms. Carter's knowingly false statement about the "dismissal" of Ms. Collier's "unsubstantiated" complaint violated D.C. Rules of Professional Conduct 3.3(a)(1), regarding false statements to a tribunal, and 8.4(c), regarding conduct involving dishonesty, fraud, deceit, or misrepresentation. The Board on Professional Responsibility then adopted the Committee's findings and recommended a sixty-day suspension.

Ms. Carter encourages this court to part from the Board's recommendation, advancing three primary arguments: (1) her statement was not actually false; (2) even if it was false, she believed it to be true and therefore did not *knowingly* make a false statement; and (3) mitigating circumstances render the Board's choice of sanction overly harsh.

We reject all three contentions. First, when Ms. Carter made the challenged statement, Ms. Collier's complaint was being pursued by Disciplinary Counsel and had not been "dismissed" under any reasonable definition of the word. Second,

Ms. Carter's explanation for why she nevertheless believed that Ms. Collier's complaint had been dismissed falls woefully flat; she simply could not, as she claims, have compared Ms. Collier's complaint to her petition for negotiated disposition and concluded that there was no overlap. Third, Ms. Carter's purported "mitigating circumstances" do not upset the strong presumption in favor of the Board's chosen sanction; if anything, the Board's sanction is overly lenient, although we decline to modify it. Accordingly, we adopt the Board's report and recommendation and suspend Ms. Carter for sixty days, to begin thirty days from the date of this opinion. *See* D.C. Bar. R. XI, § 14(f).

## I. Factual and Procedural Background

We distill this background, as we must, from the Committee's and Board's findings of fact.[1] We begin by discussing Ms. Carter's representation of Ms. Collier, then turn to her initial disciplinary proceedings, and finally address the proceedings that have culminated in this opinion.

---

[1] Although Ms. Carter takes exception with some of the Board's subsidiary factual findings, her protests either (1) go to the weight of the evidence, (2) highlight the Board's alleged failure to mention other facts that Ms. Carter considers material, or (3) are conclusory. We therefore decline to upset any of the Board's subsidiary findings. *See In re Johnson*, 298 A.3d 294, 310 (D.C. 2023) (explaining that because the "weight, value and effect of evidence fall primarily within the sphere customarily left to the factfinder," exceptions grounded in weight-related arguments must fall on deaf ears (internal quotation marks omitted)).

## A.  Ms. Collier's Lawsuit

Ms. Collier retained Ms. Carter in 2016 to represent her in a defamation action against television personality Steve Harvey and The Steve Harvey Show. Ms. Carter initially attempted to settle the case but, when those efforts proved fruitless, enlisted the aid of local counsel licensed to practice in California.

Once local counsel entered an appearance in Ms. Collier's California lawsuit, Ms. Carter filed a motion to appear *pro hac vice*. In support of that motion, Ms. Carter declared under penalty of perjury that she "was not a resident of California, nor had she regularly practiced in California."

These seemingly routine proceedings quickly took a turn for the worse. Counsel for Mr. Harvey became suspicious when (1) a filing sent to Ms. Carter's purported D.C. address was returned as undeliverable, and (2) in response Ms. Carter gave them a California address. They investigated further and ultimately opposed Ms. Carter's *pro hac vice* application, explaining that she "had been holding herself out as a Los Angeles or Hollywood attorney on her website and on social media." To further support the inference that Ms. Carter was not being truthful about her D.C. residency, counsel for Mr. Harvey pointed out an additional falsehood on Ms. Carter's website: it included a profile for a nonexistent attorney named Michael Smith.

In response, Ms. Carter submitted a declaration claiming that Michael Smith's biography was a remnant from a WordPress website template that she inadvertently forgot to delete. This claim was false; Ms. Carter had in fact copied Michael Smith's biography from the background of an attorney whom Ms. Collier had initially retained as California co-counsel and used a stock photo from the Internet. After holding a hearing, the California court denied Ms. Carter's *pro hac vice* application, voicing "concerns about [her] credibility and honesty with respect to the biography of Michael Smith on her website."

### B. Initial Disciplinary Proceedings

Unsatisfied with Ms. Carter's services, Ms. Collier filed a complaint with Disciplinary Counsel. This complaint included eight enumerated grievances, the fifth of which read as follows:

> [Ms. Carter] was dismissed from case for Pro Hac Vice due to stating false claims she was able to practice in Los Angeles in which she stated in the beginning she was in California (Documented on LinkedIn). Made me believe she was able to file complaint in California and Virginia. She did not disclose she could not file until after the statute of limitations date had passed. She kept urging me to settle with demand letter and I said I wanted to file lawsuit.

Disciplinary Counsel initiated an investigation into Ms. Carter and ultimately filed a specification of charges against her. Count II of this specification—titled

"Dominique Collier"—began by describing Ms. Carter's representation of Ms. Collier, then set forth Ms. Carter's misrepresentations related to her *pro hac vice* application, and finally accused her of lying to Disciplinary Counsel during its own investigation by continuing to misrepresent what happened with the attorney profile.

Ms. Carter and Disciplinary Counsel sought to resolve the matter via settlement and therefore filed an initial petition for negotiated disposition in late February 2022. In this petition, Ms. Carter stipulated that she had lied both to the California court and to Disciplinary Counsel and acceded to a suspension of six months with ninety days stayed. In late May, the parties amended the petition to add a requirement that Ms. Carter take a CLE course and to remove from the stipulated facts the contention that Ms. Carter had asked Mr. Harvey's attorneys to send filings to a California address. This court then approved the amended petition for negotiated disposition in August 2022.

### C.    The Additional Alleged Falsehood

While her initial petition for negotiated disposition was pending, Ms. Carter filed a small claims action against Ms. Collier in the Superior Court of the District of Columbia, seeking approximately $3,000 in unpaid fees. In connection with this action, she claimed under oath that Ms. Collier had "filed a Bar complaint that was later dismissed because it was unsubstantiated." She made this statement despite

(1) never having received a communication from Disciplinary Counsel regarding any such dismissal and (2) later agreeing to serve an approximately ninety-day suspension to resolve an investigation that contained a count labeled "Dominique Collier."

Once made aware of this new statement, Disciplinary Counsel filed a new specification of charges against Ms. Carter, which reached a Committee hearing in May 2023.

### D.    Proceedings Below

After taking evidence at the hearing, the Committee found that Ms. Carter had made a knowingly false statement of fact to a tribunal in violation of Rules 3.3(a)(1) and 8.4(c). It concluded that although Ms. Carter appeared to have convinced herself after the fact of her honesty (and therefore testified credibly at the hearing), her apparently honest belief nevertheless constituted a "post-hoc rationalization[ ]" and "tortured interpretation" of her statement to the Superior Court. It recommended a six-month suspension with ninety days stayed in favor of one year of unsupervised probation.

The Board adopted the Committee's "findings in totality, including its credibility findings." And in its own analysis, the Board referenced what it considered to be abundant circumstantial evidence of Ms. Carter's actual knowledge

that Ms. Collier's complaint had not been dismissed, most notably that (1) Ms. Carter "knew the bar complaint resulted in a Specification of Charges that reiterated issues related to the *pro hac vice* application raised by opposing counsel" and (2) she "knew the Specification of Charges was still pending" at the time she made the challenged statement. The Board further noted that it had "no reason to set aside the . . . Committee's credibility finding that Respondent, despite her explanations given at the hearing, knew that her client's bar complaint had *not* been 'dismissed as unsubstantiated' when she made the false statement," as the Committee "had the opportunity to observe [Ms. Carter's] demeanor at the hearing." The Board, however, recommended a lesser sanction of a sixty-day suspension, finding that result to be more in line with "comparable cases."

Ms. Carter filed exceptions to the Board's report and recommendation in this court.

## II.    Analysis

We begin by summarizing the applicable standard of review and the rules Ms. Carter is alleged to have violated. We then address whether Ms. Carter's statement was false and whether she knew that the statement was false. After resolving both questions in the affirmative, we conclude by evaluating the Board's proposed sanction.

Ultimately, we adopt the Board's report and recommendation in full. The Board's finding that Ms. Carter knew Ms. Collier's complaint had not been dismissed is amply supported by evidence. And Ms. Carter's proposed mitigating circumstances do not offset the strong presumption in favor of the Board's sanction.

## A. Standard of Review

When reviewing the Board's report and recommendation, we accept the Board's findings of fact where they are supported by substantial evidence, i.e., "enough evidence for a reasonable mind to find sufficient to support the conclusion reached." *Johnson*, 298 A.3d at 308 (internal quotation marks omitted). Relatedly, we "place great weight on" the Committee's credibility determinations, as it possesses the "unique opportunity to observe the witnesses and assess their demeanor." *In re Pearson*, 228 A.3d 417, 423 (D.C. 2020) (per curiam) (internal quotation marks omitted).

Our deference evaporates with respect to the Board's legal determinations; we review those de novo. *Johnson*, 298 A.3d at 309. Such "legal" determinations include the Board's resolution of "ultimate facts," i.e., "whether the facts establish a violation of a Rule." *In re Evans*, 902 A.2d 56, 60 (D.C. 2006). For instance, although we defer to the Board's determination that an act occurred on one date rather than another, we reach our own conclusion as to how that determination bears

on whether an attorney violated the relevant rule. Ultimately, "Disciplinary Counsel must establish a violation of a Rule of Professional Conduct by clear and convincing evidence." *In re Tun*, 195 A.3d 65, 72 (D.C. 2018).

Deference returns where the Board's recommended sanction is concerned. We adopt the Board's sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar. R. XI, § 9(h)(1). We have interpreted this rule to create a "strong presumption in favor of [the sanction's] imposition," meaning that "if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam) (internal quotation marks omitted). That said, where "this court takes a significantly different view of the seriousness of an attorney's conduct," we have "not hesitated to reach [our] own conclusion as to the appropriate sanction." *Id.*

## B. Rules 3.3(a)(1) and 8.4(c)

The Board found that Ms. Carter violated two of the District's Rules of Professional Conduct. The first—D.C. Rule of Professional Conduct 3.3(a)(1)—forbids an attorney from "knowingly . . . [m]ak[ing] a false statement of fact or law to a tribunal." Although an attorney must have "actual knowledge of the fact [or

law] in question" to violate this rule, we may infer such knowledge from the circumstances surrounding the alleged falsehood. *See* D.C. R. Pro. Conduct 1.0(f).

The second—D.C. Rule of Professional Conduct 8.4(c)—imposes a more general bar against "conduct involving dishonesty, fraud, deceit, or misrepresentation," whether or not directed at a tribunal. Rule 8.4(c) thus captures violations of Rule 3.3(a)(1) within its ambit; because making a false statement necessarily constitutes dishonest conduct, where an attorney violates Rule 3.3(a)(1), they violate Rule 8.4(c) as well. *See Tun*, 195 A.3d at 74 (concluding that a single instance of dishonesty violated both Rules 3.3(a)(1) and 8.4(c)); *Evans*, 902 A.2d at 73 (contrasting Rule 8.4(c)'s "general prohibition against conduct involving dishonesty" with Rule 3.3's "specific duty of candor to a tribunal").

### C.      Discussion

To uphold the Board's determination that Ms. Carter violated Rule 3.3(a)(1)—and through it, Rule 8.4(c)—we must conclude both that Ms. Carter's statement was false and that, at the time she made it, she knew that it was false.[2] More specifically, we must hold that (1) Ms. Collier's complaint was not dismissed,

---

[2] No one disputes that the small claims court constituted a "tribunal" within the meaning of Rule 3.3(a)(1).

and (2) Ms. Carter knew as much when she asserted to the small claims court that it had been.  We explain below why both conclusions are justified here.

### 1.      Was the statement false?

To hold that Ms. Carter made a false statement to the small claims court, we need focus on only one aspect of her statement—her claim that Ms. Collier's complaint was "dismissed."[3]  For the reasons set forth below, we conclude that no such dismissal occurred.

We begin with the meaning of the term "dismissed," as the small claims court would reasonably have understood it.   The choice of this term implies that someone—here, Disciplinary Counsel, the Committee, or the Board—affirmatively dispensed with Ms. Collier's complaint such that no further action, including the imposition of sanctions, would occur as a result of its filing.  *See Dismiss*, Black's Law Dictionary (12th ed. 2024) ("[T]o terminate (an action or claim) without further hearing . . . .");      *Dismiss*,      Merriam-Webster,      https://www.merriam-

---

[3] As the Board recognized, "statements about the interpretation or impact of legal proceedings are often treated as statements of non-actionable opinion and not ascertainable fact."   Accordingly, it is unclear whether a mere claim that Ms. Collier's complaint was "unsubstantiated" (without reference to dismissal) would have violated Rule 3.3(a)(1).  But because we determine that Ms. Carter's reference to Disciplinary Counsel's purported dismissal was false, we need not address the veracity of Ms. Carter's additional assertion regarding the reason underlying the purported dismissal.

webster.com/dictionary/dismiss; https://perma.cc/PF2L-JR6E ("[T]o put (an action) out of judicial consideration . . . ."). Put simply, a complaint does not dismiss itself—some party or adjudicator must *decide* to dismiss a complaint.

Because no dismissal decision of any sort occurred here, Ms. Carter's statement was false. No *affirmative* dismissal occurred—Disciplinary Counsel never issued any statement to Ms. Carter stating that it would proceed no further with Ms. Collier's complaint. Nor is there a tenable argument that Disciplinary Counsel *functionally* dismissed Ms. Collier's complaint through inaction. After Disciplinary Counsel received Ms. Collier's complaint, it filed a specification of charges against Ms. Carter that contained an entire count titled "Dominique Collier." And this specification culminated in the imposition of sanctions on Ms. Carter. Suffice it to say that a dismissed complaint does not result in negative consequences for the complained-about party. Ms. Collier's complaint was never dismissed.

### 2.     Did Ms. Carter know that her statement was false?

So, Ms. Carter's liability turns on her knowledge of her statement's falsehood. Disciplinary Counsel argues that the Committee's "first-hand observation of [Ms.] Carter and conclusion that her story was not believable amount to credibility findings which must be accepted so long as they are supported by evidence in the record and not contrary to law." We need not address this argument, however.

Assuming without deciding that de novo review applies, we agree with the Committee and Board that Disciplinary Counsel established Ms. Carter's knowledge by clear and convincing evidence.

Ms. Carter admits that she knew about Ms. Collier's complaint, was aware of Disciplinary Counsel's investigation, and recognized that she would be suspended if the Board and this court accepted her petition for negotiated disposition. Her defense thus does not rest on lack of notice about the complaint and investigation, but instead on her purported belief that the complaint and the investigation were unconnected. According to Ms. Carter, she compared each of Ms. Collier's allegations with the wrongdoing described in her negotiated resolution and determined for herself that none of Ms. Collier's allegations were included. Based on this determination, she concluded that Disciplinary Counsel "was not moving forward with any of the . . . allegations in Ms. Collier's [complaint], but instead [was] moving forward with their own separate bar investigation." So, she thought, Ms. Collier's complaint must have been dismissed.

This explanation fails at its first step. Ms. Carter's amended petition for negotiated disposition[4] stated in its second paragraph that Disciplinary Counsel had

---

[4] As the Board explained, the amended petition is in material part identical to the initial petition.

"received a complaint from Dominique Collier," who "alleged that [Ms. Carter had] mishandled her case." This language makes clear that Disciplinary Counsel considered Ms. Collier to have alleged general misconduct, including the specific misconduct for which Ms. Carter acceded to sanctions. It is not true, therefore, that none of Ms. Collier's allegations were included in the petition for negotiated disposition.

Ms. Carter's explanation becomes no more successful when we parse Ms. Collier's complaint at greater levels of specificity. In the fifth count of her complaint, Ms. Collier accused Ms. Carter of falsehoods related to her *pro hac vice* application, and Ms. Carter agreed in her petition for negotiated disposition that she had lied in connection with that same *pro hac vice* application. And we can get more specific still. Ms. Collier alleged that Ms. Carter made "false claims [that] she was able to practice in Los Angeles" that were "[d]ocumented on LinkedIn," and Ms. Carter stipulated in her petition for negotiated disposition that an attorney working for Mr. Harvey had "discovered that [Ms. Carter] held herself out as a Los Angeles or Hollywood attorney on her website and on social media." If, as Ms. Carter implies, she conducted a line-by-line comparison of the allegations in Ms. Collier's complaint and the petition for negotiated disposition, we find it beyond belief that she could conclude that nothing in Ms. Collier's complaint made it into the petition for negotiated disposition.

In sum, we agree with the Committee and the Board that Ms. Carter's explanation constitutes a "tortured" exercise in "post-hoc rationalization[ ]." Because Ms. Carter admits to having read Ms. Collier's complaint, Disciplinary Counsel's specification of charges, and her own petition for negotiated disposition, she must have known that Ms. Collier's complaint was the reason she was being disciplined and, therefore, that the complaint had not been dismissed. Accordingly, Ms. Carter's statement violated Rules 3.3(a)(1) and 8.4(c).

### D.    Sanction

All that remains is to determine whether we should adopt the Board's recommended sanction. A sanction imposed for attorney misconduct should "not only . . . maintain the integrity of the profession and . . . protect the public and the courts, but also . . . deter other attorneys from engaging in similar misconduct." *Johnson*, 298 A.3d at 316 (internal quotation marks omitted). Such a sanction, however, should not be designed with punishment in mind. *Baber*, 106 A.3d at 1076.

Although the Board recommends the sanction in the first instance, "the imposition of sanctions[ ] is the responsibility and duty of this court." *In re Kanu*, 5 A.3d 1, 14 (D.C. 2010) (internal quotation marks omitted). When determining whether to impose the Board's recommended sanction, this court may consider: "(1) the seriousness of the conduct, (2) prejudice to the client, (3) whether the

conduct involved dishonesty, (4) violation of other disciplinary rules, (5) the attorney's disciplinary history, (6) whether the attorney has acknowledged his or her wrongful conduct, and (7) mitigating circumstances." *In Re Martin*, 67 A.3d 1032, 1053 (D.C. 2013). These factors here counsel in favor of a severe sanction.

We begin with the seriousness of Ms. Carter's misconduct in light of her disciplinary history. "[T]here is nothing more antithetical to the practice of law than dishonesty . . . ." *In re Howes*, 52 A.3d 1, 16 (D.C. 2012) (internal quotation marks omitted). Indeed, because courts in our adversarial system rely on counsel to present the facts and set forth the applicable law, dishonesty to a tribunal undermines the core function of the judicial system. *See In re Reback*, 513 A.2d 226, 231 (D.C. 1986) (en banc). And Ms. Carter has now been caught in a lie three times: once to the California court, once to Disciplinary Counsel, and once more to the Superior Court. This pattern of dishonesty cannot be allowed to continue.

Our concern is elevated further by the apparent motivation underlying Ms. Carter's misconduct. We have said that an attorney's "dishonesty is particularly disturbing" when it comes "at the expense" of the attorney's client or is "in large part driven by a desire for personal gain." *Baber*, 106 A.3d at 1077. Both of these circumstances are present here. By informing the Superior Court that Ms. Collier's complaint had been dismissed as unsubstantiated, Ms. Carter was attempting to

persuade the court to doubt Ms. Collier's credibility, in turn making it more likely that the court would award Ms. Carter her fees out of Ms. Collier's pocket. This is not a case where an attorney's zeal in representing their client got out of hand. Instead, this case involves Ms. Carter lying to undermine her former client.

Third, we agree with the Board's finding that Ms. Carter "continues to show a lack of remorse." Even after being informed of the Committee's preliminary determination that she had committed misconduct, Ms. Carter (1) expressed her disappointment with Ms. Collier's decision not to pay her and (2) implied that Ms. Collier would not have filed her bar complaint had Ms. Carter not asked for her fee. Given that Ms. Collier's belief that Ms. Carter had failed to adequately represent her has now been affirmed multiple times, we find Ms. Carter's apparent view that she has been wrongfully persecuted ill-taken. And her related failure to accept responsibility constitutes an aggravating factor where discipline is concerned. *Howes*, 52 A.3d at 20.

Lastly, we see no mitigating facts. Ms. Carter proposes four: (1) Ms. Collier never paid her, (2) she has already completed a suspension related to her representation of Ms. Collier, (3) she supports her disabled brother through her income as a lawyer, and (4) she relied on the advice of her counsel when determining that the complaint had been dismissed. These facts do not appear to be properly

characterized as "mitigating." The absence of payment from Ms. Collier does not justify Ms. Carter's falsehood; the fact that Ms. Carter was previously disciplined for a *different* falsehood is an aggravating, not a mitigating, circumstance; and there is no indication that Ms. Carter's financial support of her brother played any role in her misconduct, *cf. In re Elgin*, 918 A.2d 362, 374 (D.C. 2007) (concluding that the expensive illness of one of the respondent's sons was a mitigating factor *because* it played a causal role in the respondent's financial misconduct). And regarding the advice of counsel, Ms. Carter as an attorney bore a duty under Rule 3.3 to conduct a "reasonably diligent inquiry" into the facts she represented. D.C. R. Pro. Conduct 3.3 cmt. [2]. Mere reliance on the unsubstantiated opinion of her counsel (an opinion, moreover, that flies in the face of how a reasonable person would interpret the status of Ms. Carter's disciplinary action) does not constitute such an inquiry.

After walking through the above, we recognize that one could make a case for the imposition of a more severe sanction than that recommended by the Board. Two factors, however, counsel against that course: (1) the Board's careful consideration of penalties imposed in similar cases and (2) Disciplinary Counsel's decision not to file an exception with respect to the Board's recommended sanction.

First, one of the paramount considerations in attorney discipline cases is that the sanction imposed not "foster a tendency toward inconsistent dispositions for

comparable conduct." *See Johnson*, 298 A.3d at 308 (quoting D.C. Bar R. XI, § 9(h)(1)). In selecting its proposed sixty-day suspension, the Board reviewed a number of cases that imposed lesser sanctions for similar dishonesty. *See, e.g.*, *In re Rosen*, 481 A.2d 451, 452, 455 (D.C. 1984) (imposing a thirty-day suspension for misrepresentations in three separate pleadings despite the respondent's two prior discipline cases); *In re Owens*, 806 A.2d 1230, 1231 (D.C. 2002) (per curiam) (imposing a thirty-day sanction for a misrepresentation that, in addition to constituting a violation of Rules 3.3(a)(1) and 8.4(c), also violated Rule 8.4(d) (prohibiting conduct that seriously interferes with the administration of justice)). We agree with the Board that these cases counsel in favor of a sixty-day suspension here.

Second, although we do not consider ourselves bound by Disciplinary Counsel's failure to file an exception, *see Kanu*, 5 A.3d at 14, we recognize that in at least most of the cases in which we have departed upwards from the Board's sanction, Disciplinary Counsel urged such a result. *See, e.g.*, *In re Daniel*, 11 A.3d 291, 297, 300 (D.C. 2011) (imposing three-year instead of one-year suspension after Disciplinary Counsel filed an exception); *In re Kline*, 11 A.3d 261, 263 (D.C. 2011) (similar). Disciplinary Counsel's decision not to file an exception here, given its expertise in disciplinary matters, weighs against a departure from the Board's recommendation.

Accordingly, we adopt the Board's recommended sanction.

### III.    Conclusion

In light of the foregoing, we adopt the Board's report and recommendation in full.  It is therefore ORDERED that Jehan A. Carter is suspended from the practice of law in the District of Columbia for sixty days.  For purposes of reinstatement, we refer Ms. Carter to the requirements of D.C. Bar R. XI, § 16(c), and further direct her attention to D.C. Bar R. XI, § 14, governing the responsibilities of suspended attorneys.

*So ordered.*